**CRAIG v. STEELE.**

**No. 9228.**

United States District Court,
W. D. Missouri, W. D.

Aug. 18, 1954.

Wilbur E. Craig, pro se.

Edward L. Scheufler, U. S. Atty., Kansas City, Mo., Joseph L. Flynn, Asst. U. S. Atty., St. Joseph, Mo., for respondent.

RIDGE, District Judge.

From the petition for writ of habeas corpus and return of respondent to order to show cause, the following undisputed facts appear.

The petitioner is now confined in the United States Medical Center for Federal Prisoners, at Springfield, Missouri, under order adjudicating defendant mentally incompetent, entered by the United States District Court for the Southern District of Georgia, Augusta Division. Under said order, petitioner stands "committed to the custody of the Attorney General, or his authorized representatives, until the accused shall be determined mentally competent to stand trial, or until the pending charges against him are disposed of according to law; that in the event the said charges against him are not previously disposed of, and upon a future determination by the Attorney General, or his authorized representatives, that the said Wilbur Edward Craig is mentally competent to understand the proceedings against him and aid in his defense, that he be forthwith returned to (the committing) Court to stand trial in (his) case."

Petitioner was arrested pursuant to a complaint filed in the United States District Court for the Southern District of Georgia, Augusta Division, on December 14, 1953. ' The complaint charged defendant with felonious assault with a deadly weapon on a doctor and nurse at the Lenwood Hospital, located at Augusta, Richmond County, Georgia, on land acquired for the use and under the exclusive jurisdiction of the United States of Ameri-

154

ca. Following his arrest on said complaint, and upon motion of the Assistant United States Attorney for the Southern District of Georgia, petitioner was committed by the Court in which the charge made against him was pending, to the United States Penitentiary at Atlanta, Georgia, for a psychiatric examination and determination of his mental competency to stand trial. Thereafter, a written report of the mental condition of defendant having been filed with said Court, defendant was again brought before the Court and a hearing held on the 1st day of February, 1954, as to the mental competency of petitioner to understand the charges and proceedings against him and to properly assist in his defense. After hearing evidence on said issue, the District Court made findings of fact and entered an order under the first part of Section 4246, Title 18 U.S.C.A., committing defendant to the custody of the Attorney General as above recited.

Pursuant to said commitment, petitioner has been confined in the Medical Center, supra. Report of the Neuropsychiatric Staff of said institution, made under date of May 13, 1954, reveals petitioner's mental condition being diagnosed as "schizophrenic reaction, paranoid type." It appears that said Staff unanimously agrees that petitioner remains phychotic and incompetent. "The Staff further agrees that subject is potentially dangerous and the prognosis for recovery is poor, in view of the long duration of the paranoid schizophrenic process with which the subject is afflicted. * * * The Staff agrees that the subject is mentally incompetent and does not fully understand the nature and quality of the offense with which he is charged, and he could not properly assist in his defense." It is the recommendation of the Staff that petitioner be given specified treatment for his mental condition, "recognizing that the possibility of recovery with this treatment must be considered guarded because of the duration of the illness." It was the further recommendation of said Psy-

chiatric Staff that petitioner's committing court be advised of its findings.

Petitioner now contends that his confinement in the Medical Center is illegal and void, and that he is entitled to be removed therefrom and incarcerated in a hospital under the supervision of the Veterans Administration, or a hospital of the State of his residence. The gist of such claim is that petitioner, in his petition for writ of habeas corpus, contends that he is permanently insane; that the diagnosis of the Psychiatric Staff of the Medical Center confirms that fact. As a consequence, petitioner says that he never will be able to stand trial on the charges pending against him; that so long as such charges remain pending against him he cannot be discharged from the Medical Center under his present commitment. Therefore, he asserts that by the terms of the commitment under which he is presently held in the Medical Center it is tantamount to confinement of petitioner for life because of insanity, without due process of law. The claimed denial of due process of law as made by petitioner is based on the proposition that the confinement and detention of the permanently insane is a matter wholly within the police power of the several States to exercise, as *parens patriae;* that the Federal Government, having no police power, cannot make any provision for the custody or detention of the permanently insane; therefore, he asserts, the procedure and scheme devised by the Congress for the incarceration of the mentally incompetent after arrest and before trial, for an offense committed against the United States, as provided by Sections 4244 to 4248, Title 18 U.S.C.A., is unconstitutional and void as an usurpation of a power by the Congress that is reserved to the several States.

 I have heretofore expressed my thoughts concerning the constitutional power of the Congress to provide for the commitment and detention of mental defectives, whether temporarily or permanently insane, who are found violating the Criminal Code as enacted

by the Congress. Cf. Higgins v. McGrath, D.C., 98 F.Supp. 670; Kitchens v. Steele, D.C., 112 F.Supp. 383. My thoughts respecting that matter, tersely stated, are: there can be no question of the power of the Congress to enact a Criminal Code protecting its sovereignty; that, technically speaking, Congress is not vested with general police powers and cannot enact police regulations; nevertheless, it has powers analogous to the police powers of the States which it may exercise in respect to matters affecting its sovereignty; that the scheme devised by the Congress in enactment of Sections 4244 to 4248, Title 18 U.S.C.A., whereby provision is made for the detention and confinement of mental defectives who are charged with the violation of the Federal Criminal Code, is the exercise by the Congress of "legislative powers within the sphere of general powers granted to it by the Constitution which are typical of what would, in the case of a State, be designated as 'police powers'." 11 Am.Jur., Sec. 257, p. 990.

Once it is conceded that the Federal Government has the power to protect its sovereignty by enactment of the Criminal Code, it must follow that the Federal Government has powers to prescribe regulations concerning that Code, the same as a State Government would have concerning a subject within its reserved powers. Hence, the Federal Government has the power to provide for the commitment of mental defectives found violating Federal laws, "until the accused shall be mentally competent to stand trial" Sec. 4246, supra, or if he is found to be permanently insane so that he will in all probability never be able to stand trial on a charge made against him, confine such a person "until (his) mental competency * * * shall be restored or until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, or until suitable arrangements have been made for the custody and care of the prisoner by

the State of his residence, whichever event shall first occur", as provided by the Congress in Sections 4246, 4247 and 4248, supra. For the Congress to so provide is not to commit a citizen for insanity as contended by petitioner, but to protect the sovereignty of the United States from law violators.

In the case at bar, it clearly appears that the crime with which petitioner was charged was committed upon property over which the Federal Government had exclusive jurisdiction. From the reports of the Neuropsychiatric Staff of the Medical Center, it appears that petitioner is potentially dangerous. He has verbalized his feeling against the Staff of the Veterans Administration Hospital in which he has been confined, as well as other officers of the United States. From affidavit of the Assistant United States Attorney for the Southern District of Georgia, attached to the return to the order to show cause, it appears that on August 29, 1946, petitioner "was adjudicated a lunatic by the proper authorities and under the provisions of Georgia law, in Lowndes County, Georgia;" and as a consequence of that adjudication said Assistant United States Attorney undertook to sound out the authorities in charge of the Georgia State Hospital for the Insane, at Milledgeville, Georgia, toward the commitment of the petitioner in that institution, as a consequence of the adjudication of lunacy above referred to. Under existing law of the State of Georgia, and because of the lapse of time since the commitment of petitioner by the authorities of Lowndes County, Georgia, petitioner cannot be accepted for confinement in said State institution. In order that he be so committed, it appears to be necessary that petitioner be transported to Lowndes County, Georgia, and that another Lunacy Commission be constituted according to Georgia law to adjudicate his present mental competency, and that a new adjudication of insanity and commitment result from such inquiry. From the report of the Neuropsychiatric Staff of the Medical Center, it does not

**156**

definitely appear that petitioner is so hopelessly insane that he never will be able to stand trial on the charge made against him. The inference from said report is that petitioner apparently is permanently insane, but that there is a slight possibility of recovery if certain medical treatment is afforded petitioner. Said Committee recommends that petitioner be retained in said Medical Center for further treatment.

In light of the foregoing, we do not believe that petitioner is entitled to the issuance of a writ of habeas corpus on his instant petition. Petitioner has only been in the custody of the respondent under the commitment entered by the United States District Court for the Southern District of Georgia since February 2, 1954. Regardless of that elapsed period of time, the commitment under which petitioner is presently held is, at most, temporary. If petitioner's mental condition is finally diagnosed as being permanent so that he will never be able to stand trial on the charges pending against him, then two alternatives are open to the Attorney General: (1) the Attorney General may proceed to make provision for the transfer and removal of the petitioner to the jurisdiction of petitioner's residence; (see last sentence of Section 4248, supra) or (2) he may return petitioner to the Court having jurisdiction of the charge made against petitioner for an additional hearing as provided in the last part of Section 4246, supra, that is, "that if released (petitioner) will probably endanger the safety of the officers, the property, or other interests of the United States, and that suitable arrangements for the custody and care of (petitioner) are not otherwise available". Section 4247, supra. If a commitment is made as the result of such a determination, then petitioner may be recommitted to the custody of the Attorney General of the United States "until (his) mental competency * * * shall be restored or until the mental condition of the (petitioner) is so improved that if he be released he will not endanger the safety of the officers, the property, or other in-

terests of the United States, or until suitable arrangements have been made for the custody and care of (petitioner) by the State of his residence, whichever event shall first occur." If so committed, then petitioner may be retained in the custody of the Attorney General as provided in Section 4248, Title 18 U.S.C.A. The commitment so made under said section would only be temporary, i. e., until "whichever event shall first occur", as enumerated and set forth in that section. The Federal Government has authority to temporarily commit insane persons found violating Federal laws. Wells, by Gillig, v. Attorney General, 10 Cir., 201 F.2d 556.

Therefore, petitioner's petition for writ of habeas corpus is by the Court dismissed because no facts are alleged therein that would authorize the issuance of a writ of habeas corpus in behalf of petitioner. It Is So Ordered.