**William Parker WRIGHT, Jr.,**
**Petitioner,**

v.

**Dr. Ivan W. STEELE, Warden, United**
**States Medical Center For Federal Pris-**
**oners, Springfield, Missouri, Respond-**
**ent.**

**No. 9365.**

United States District Court
W. D. Missouri, W. D.

Oct. 8, 1954.

Opinion Modified Oct. 16, 1954.

Rehearing Denied Nov. 5, 1954.

**2**

No appearance of record for petitioner.

Edward L. Scheuffler, U. S. Dist. Atty., Kansas City, Mo., for respondent.

WHITTAKER, District Judge.

This is a petition for writ of habeas corpus. Petitioner alleged that in March of 1953 he was arrested for violation of the Dyer Act, 18 U.S.C. § 2311 et seq., and taken before the District Court of the United States for the Southern District of West Virginia for arraignment; that thereupon, upon motion, that court ordered petitioner committed to the Federal Reformatory in Chillicothe, Ohio for an examination for determination of whether he was insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, under Section 4244, Title 18, U.S.C.; that petitioner was detained in such custody for such purpose until the 9th day of June, 1954, at which time he was taken before the court and a hearing was held upon the question of petitioner's then mental competence, and that hearing resulted in a finding of that date "that the defendant is mentally incompetent and unable to understand the charges pending against him and unable to render assistance to his counsel in defending said charge", and resulted, further, in a commitment by said court, under Section 4246, Title 18, U.S.C., of petitioner "to the custody of the Attorney General until he shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law, whichever shall first occur, or unless and until he is determined to be permanently incompetent by proper authorities"; that pursuant to said commitment petitioner came into custody of respondent at the United States Medical Center for Federal Prisoners in Springfield, Missouri, on July 2, 1954, and has ever since remained in custody of respondent at that place.

Respondent, in his return to this court's order to show cause, admits the foregoing to be the facts.

Petitioner's petition further alleges that at the time of the commission of the alleged offense and at the time of the arraignment and ever since and now, he is "permanently incompetent", and will never be mentally competent to stand trial upon the charges against him, and, thus, in effect, he is being detained for life simply because of a finding by the court of original jurisdiction that he is not mentally competent to stand trial upon the charges against him.

Believing that the holdings in the cases of Wells, by Gillig, v. Attorney General, 10 Cir., 201 F.2d 556, and Higgins v. United States, 9 Cir., 205 F.2d 650, would, under the facts alleged—and par-

ticularly if petitioner is "permanently" incompetent—, render further detention of petitioner unlawful, I issued order upon respondent to show cause why a writ of habeas corpus should not be issued as prayed, generally, and also particularly with respect to "(b) whether, in fact, petitioner is chronically and permanently insane, (c) whether, if petitioner is chronically and permanently insane, any attempt has been made to determine if the state of petitioner's citizenship will receive and care for him, and, if so, will such state receive petitioner, and if no such attempt has been made, why has it not been made (d) whether suitable arrangements for the custody and care of petitioner, if he requires custody and care, are privately or otherwise available to petitioner within the knowledge of respondent, and (e) whether petitioner, if not in custody, would be dangerous to the officers and property or other interests of the United States." In return to those special questions respondent has answered "(b) the determination whether petitioner is chronically and permanently insane has not as yet been determined. The final determination on this point must await further clinical studies, observation, response to any indicated treatment which may be discovered, etc. * * * (c) it has not been determined to date that petitioner is chronically and permanently insane, hence no attempt has been made to determine if state of petitioner's citizenship will receive and care for him, (d) answered by initial premise in (c), and (e) no determination has been achieved as to whether petitioner would be dangerous to the officers and property or other interests of the United States."

Respondent accompanied his return with a 4-page, single spaced, typewritten report of neuro-psychiatric examination of petitioner made by Dr. Stanley R. Kemler, Staff Psychiatrist of the Springfield Medical Center, on September 1, 1954, which shows that petitioner "suffers from an organic brain disease, probably due to encephalitis" when a child, and for a long time has been mentally ill; that he suffers from a *chronic* brain syndrome, associated with convulsive disorder of a petit mal epilepsy character, and the report does not state a favorable prognosis, but concludes saying that petitioner "should be seen by the NP staff for final recommendations to the court."

It thus appears that though petitioner has been committed to the custody of the United States, and under observation by Federal psychiatrists, since the early spring of 1953 until now—more than one and one-half years—, they are unable, even yet, to say, definitely, whether he is "permanently" mentally incompetent to understand the charges against him or properly and intelligently to assist in their defense.

Both the 10th Circuit, in the Wells case [201 F.2d 559] supra, and the 9th Circuit, in the Higgins case, supra, have sustained the constitutionality of Sections 4244 and 4246, Title 18 U.S.C., upon the basis that it is within the constitutional power of the Congress "to make provision for the proper care and treatment of persons who become *temporarily insane* while in custody of the United States awaiting trial upon criminal charges * * *" (emphasis supplied) and that those statutes contemplate and mean that detention thereunder shall be only "temporary" and for only such "a reasonable period of time" as will afford a fair opportunity to determine whether the accused is only temporarily incompetent and will soon be able to stand trial, and that the statutes are, therefore, constitutionally valid. It follows that if petitioner is not, within a reasonable time after his commitment under Section 4246, Title 18 U.S.C., found mentally competent to stand trial upon the charges against him, he must be discharged.

Sections 4244 and 4246, Title 18 U.S.C., obviously were enacted as a shield to protect a person, temporarily mentally incompetent, from having to stand trial, upon charges which if committed by a sane person would constitute a Federal offense, until such accused has recovered from his temporary in-

competence sufficiently to understand the charges against him and to intelligently assist in his own defense, and care must be taken to see that the period consumed in determining his competency or incompetency to stand trial upon those charges does not approximate, and certainly not exceed, the probable sentence—less "good" time—he would have received and served had he pleaded, or been found, guilty as charged, for that would be to turn the statutory shield into a sword.

■ While I realize that what is a reasonable time within which to hold an accused, for the purpose of making the necessary determination of mental capacity, under Section 4246, Title 18 U.S.C., will be dependent upon the particular circumstances of each case, it seems to me, as a matter of law, that one and one-half years is, at least, "a reasonable time" within which to determine the competency of this accused, in the particular circumstances here, to stand trial upon the charges against him and, therefore, to construe the statutes mentioned as granting the right to hold this particular petitioner for a longer time, in these circumstances, would be to extend them beyond constitutional limits, and to fail to follow the soundly reasoned Wells and Higgins cases [205 F.2d 653], supra. Therefore, I believe and hold that any further detention of petitioner under Sections 4246, Title 18 U.S.C., in the circumstances here, would be unlawful, and the petitioner should be ordered discharged.

I have considered remanding petitioner to the court of original jurisdiction for a further hearing as to his present mental capacity to understand the charges against him and to properly assist in the defense of those charges, but I find, from the medical information, in respondent's return before me, that petitioner's mental condition has not improved since the hearing before that court on June 9, 1954, and, hence, it would be useless, if not an impertinence to that court, to remand petitioner thereto for another hearing, when there has evidently been no improvement in petitioner's condition.

I realize the element of inhumaneness in turning a mentally incompetent person loose upon the streets where he would probably be soon, if not immediately, picked up by state authorities and subjected to sanity inquiry by them and probably committed to a state asylum, less suitable to his needs, and less comfortable, and far less well equipped and staffed for his treatment, than the United States Medical Center at Springfield, Missouri, where he is now confined—unless his mother, or some other, will take, and care for, him, of which I have some intimation—, yet the humanitarian factor is not for my determination, but, rather, the question before me is whether petitioner is being unlawfully deprived of his liberty, and I believe, as stated, that further detention of him, under the circumstances present, would be to do so, and, therefore, I feel I have no alternative but to order him discharged, and I accordingly so order.

Order Modifying Opinion.

On October 8, 1954, I prepared and filed herein memorandum and order discharging petitioner from further custody by respondent, for the reasons, more particularly and fully set forth in said memorandum and order, that though petitioner had been in Federal custody since March of 1953—first at the Federal Reformatory at Chillicothe, Ohio, until June of 1954, and thereafter in the Medical Center at Springfield, Missouri—respondent was still unable to say whether petitioner was chronically and permanently insane, and that detention of petitioner for that period of approximately one and one half years was an unreasonably long time in which to determine his mental competency to stand trial of the charges against him, and that further detention of him for the purposes of making such determination would be unlawful under the cases of Wells, by Gillig, v. Attorney General, 10 Cir., 201 F.2d 556, and Higgins v. United States, 9 Cir., 205 F.2d 650.

Thereafter, on October 15, respondent filed herein a supplemental return attaching "report of neuro-psychiatric staff meeting of October 7, 1954", (it will be noted that the date of that report was one day prior to the filing of my memorandum and order herein) showing that "the neuro-psychiatric staff agrees unanimously that present examination shows the subject to be mentally competent to answer to the charges pending against him. However, in view of the recent improvement it is felt that his prognosis must be considered as guarded", and, accompanying said supplemental return, the District Attorney filed a motion to vacate my order, discharging petitioner, of October 8, 1954, or, in the alternative, to amend that order by remanding petitioner to the court of original jurisdiction—the United States District Court for the Southern District of West Virginia—for further proceedings according to law.

██ Though the coincidence of the finding of competence of petitioner by the psychiatric staff at Springfield on October 7, 1954, the day before my memorandum and order discharging petitioner was filed, is rather remarkable, I have concluded, in view of that finding by the psychiatric staff of the Springfield Medical Center to, and I hereby do, modify and amend my order of October 8, 1954, to the extent of deleting, and I do hereby delete, the direction and order that petitioner be discharged, and, instead thereof, I order and direct that petitioner be, and he is hereby, remanded to the court of original jurisdiction—the United States District Court for the Southern District of West Virginia—for further hearing—in the light of the report of mental competence of petitioner by the neuro-psychiatric staff of the Springfield Medical Center of October 7, 1954—upon the matter of whether petitioner is now mentally competent to understand the charges there pending against him, and to intelligenty assist counsel in the defense of those charges, but, if, upon such hearing, petitioner be not found mentally competent to understand the charges there pending against him and

to intelligently assist counsel in the defense of those charges, then it is ordered that petitioner be discharged from custody.

### Motion for Rehearing and for Citation for Alleged Contempt.

By memorandum and order entered in this cause on October 16, 1954, the Court modified its memorandum and order of October 8, 1954, and ordered that petitioner be, and he was, "remanded to the court of original jurisdiction—the United States District Court for the Southern District of West Virginia—for further hearing—in the light of the report of mental competence of petitioner by the neuro-psychiatric staff of the Springfield Medical Center of October 7, 1954—upon the matter of whether the petitioner is now mentally competent to understand the charges there pending against him, and to intelligently assist counsel in the defense of those charges, but, if, upon such hearing, petitioner be not found mentally competent to understand the charges there pending against him and to intelligently assist counsel in the defense of those charges, then it is ordered that petitioner be discharged from custody."

██ Petitioner has, this date, filed herein his "Motion for Rehearing", contending that the indictment under which he was brought into Federal custody was good for only one year; that more than one year from the date of that indictment has expired; that he has not been reindicted, and, therefore, cannot, legally, now be required to stand trial under that indictment, and, that, hence, he is being unlawfully detained of his liberty, and should be discharged forthwith. There is no merit in that contention. That indictment still constitutes as valid a charge against petitioner as it ever did, and it is only very recently that petitioner has been found, by the psychiatric staff at the Springfield Medical Center, to be mentally competent to stand trial under that indictment, and it was, and is, the purpose of this Court's order of October 16, 1954, to remand petitioner to the Court of original jurisdiction for the purpose that he be given an immed-

-iate trial, under that indictment, if found competent by that Court to stand trial, and, if not, then to be discharged. It follows that petitioner's motion for rehearing should be, and it is hereby, denied.

Petitioner has also filed herein his petition for a citation directed to respondent to show cause why respondent should not be held in contempt for failure to obey this Court's order of October 16, 1954. That order did not specify a definite date for compliance, but contemplated a reasonable time. Probably a sufficient time for the transfer of petititioner to the District Court for the Southern District of West Virginia, and for the holding of the hearing specified in this Court's order of October 16, 1954, has not elapsed—certainly not so surely so as to authorize the issuance of a contempt citation to respondent. I cannot believe that respondent will not, in due season, comply with this court's order of October 16, 1954, but if compliance therewith be not had in 10 days from this date, then petitioner's application for such citation will be reconsidered, and respondent is directed to formally advise the Court, in writing, within said time, as to whether this Court's order of October 16, 1954 has been complied with, and, if so, how and when, and, if not, why not.