Earl P. GREENWOOD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15149.

United States Court of Appeals, Eighth Circuit.

Feb. 14, 1955.

William J. Burrell, Kansas City, Mo. (appointed by District Court), submitted brief for appellant.

Edward L. Scheufler, U. S. Atty., Kansas City, Mo., and O. J. Taylor, Asst. U S. Atty., Springfield, Mo., submitted brief for appellee.

Before GARDNER, Chief Judge, and SANBORN, WOODROUGH, JOHNSEN, COLLET, VOGEL, and VAN OOSTER-HOUT, Circuit Judges.

SANBORN, Circuit Judge.

The questions for decision are (1) whether a person in federal custody, charged by indictment or information with a federal offense, lawfully may be committed to the custody of the Attorney General of the United States under Sections 4246, 4247 and 4248 of Title 18 U.S.C., if such accused person, in conformity with the procedure prescribed by Section 4244 of Title 18 U.S.C., is found by a federal district court to be insane or mentally incompetent to stand trial and it appears that his insanity or mental incompetency is more than temporary and is or may be permanent; and (2) whether the provisions of the above referred to

Sections are unconstitutional, as encroachments upon powers reserved to the States by the Tenth Amendment, or as violative of the due process clause of the Fifth Amendment.

This appeal is from an order of the District Court entered July 30, 1954, committing the defendant (appellant) to the custody of the Attorney General: "(1) until the sanity or mental competency of the defendant shall be restored; (2) until the mental condition of the defendant is so improved that if he is released he will not endanger the safety of the officers, the property, or other interests of the United States; or, (3) until suitable arrangements can be made for the custody and care of the defendant by the State of Ohio, the State of the accused's residence * * * whichever event above stated shall first occur." See United States v. Greenwood, 125 F.Supp. 777, 778.

The facts are virtually undisputed. The findings of fact of the District Court, upon which the order is based, are sustained by substantial evidence. The only finding challenged is that relating to the danger of releasing the defendant. That challenge is without merit.

The importance of the questions presented and the divergent views of federal judges who have considered them require a more detailed statement of the facts than would ordinarily be justified, since the facts illustrate an important segment of the problem that the statutes under review were enacted to meet.

The defendant is under indictment by the federal grand jury for the Western District of Missouri. The indictment, which was returned November 20, 1952, charged him with having on October 22, 1952, in a Post Office in Kansas City, Missouri, committed two offenses proscribed by Section 2114, Title 18 U.S.C.: (1) felonious assault upon a custodian of mail and other property of the United States with intent to rob, and (2) the armed robbery of such custodian.

The defendant was arrested in Cleveland, Ohio, where he resided. Upon his application, the case was transferred, under Rule 20 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to the Northern District of Ohio for plea and sentence. The United States District Court for that District on February 2, 1953, ordered that the defendant be removed and his case remanded to the Western District of Missouri, because a psychiatric examination and hearing indicated that he was not mentally competent to understand the proceedings against him. The defendant was received by the United States Marshal in Kansas City, Missouri, on February 7, 1953.

The District Court for the Western District of Missouri on February 17, 1953, ordered the Marshal to deliver the defendant to the United States Medical Center for Federal Prisoners at Springfield, Missouri, for an examination and report as to his mental condition. The first report is dated April 8, 1953, and is signed by Doctor C. E. Smith, Medical Director. The report, among other things, recites that in 1945 the defendant was arrested for robbery, and shortly thereafter for assault; that in 1946 he received a one to twenty-year sentence to the Mansfield State Reformatory, Mansfield, Ohio, on a forgery charge; that he freely admitted holding up the Post Office in Kansas City; that thereafter he held up a Post Office in Cleveland, but was not prosecuted for the latter offense because a psychiatric examination showed he was a mental case. The report diagnosed the defendant's condition as "Schizophrenic Reaction, undifferentiated type, Acute," and stated that in the examiner's opinion the defendant was "legally insane."

A second report, dated January 26, 1954, from the Neuropsychiatric Staff of the Medical Center gave the same diagnosis of the mental condition of the defendant, omitting the word "Acute" and stated:

"The Neuropsychiatric Staff agreed unanimously that the patient remained psychotic and incompetent. The Staff agreed that the patient's illness is chronic, of long-standing

and that the prognosis for recovery is poor. The Staff recommends that the committing court be advised that our findings indicate that it is unlikely that this subject will regain his sanity in the near future. Therefore the Neuropsychiatric Staff recommends that consideration be given to transferring this subject to a state hospital in his state of residence."

The Board of Examiners of the Medical Center in a report dated February 4, 1954, stated that the Board concurred unanimously in the opinion that the defendant remained psychotic and incompetent, and agreed that "the subject might be considered potentially dangerous to the extent that if released he might conceivably persist in criminal activities of the type with which he is presently charged." The Board in its report noted that efforts were being made to arrange for the custody and care of the defendant in a state hospital, and recommended that he be considered a suitable candidate for such care if arrangements could be made.

In May of 1954, at the direction of the District Court for the Western District of Missouri, the defendant was transferred from the Medical Center to the custody of the appropriate authorities of the State of Ohio for commitment to a State hospital. The State authorities apparently had the defendant examined by a psychiatrist on the staff of the Probate Judge in Cleveland. The examiner concluded that the defendant was not "insane in a legal sense," and he was released by the state authorities. He was retaken into federal custody under an alias warrant issued by the District Court for the Western District of Missouri.

Upon the return of the defendant to Missouri, the District Court appointed William J. Burrell, of the Kansas City, Missouri, bar, to represent him. On June 18, 1954, Mr. Burrell filed a motion for the appointment of psychiatrists and for a hearing as to the defendant's mental competency, pursuant to § 4244, Title 18 U.S.C. The court on June 23, 1954, appointed two psychiatrists to examine into the mental condition of the defendant and make report. On July 2, 1954, the court ordered the authorities at the Medical Center to re-examine the defendant with respect to his mental condition and competency. On July 8, 1954, the Neuropsychiatric Staff of the Medical Center made a report, from which we quote the following:

"Diagnosis: Schizophrenic Reaction, undifferentiated type, chronic severe, manifested by tension, depression, confusion in thought, blocking of the thought processes, feelings of unreality, suicidal preoccupation, delusional ideas of influence, auditory hallucinations, and impaired insight and judgment.

"Conclusions: In view of these findings the psychiatric staff concurred unanimously in the opinion that the subject remains legally insane by reason of a major mental disorder which would prevent him from having a proper understanding of the proceeding pending against him and which also impairs his ability to properly assist in his own defense. They are further agreed that this subject's prognosis for recovery appears to be poor and that he will probably require indefinite hospitalization to insure his own safety and that of society. The staff does not consider the subject to be potentially dangerous except to the extent that if released, he might persist in engaging in criminal activities similar to those with which he is presently charged."

On July 15, 1954, the District Court conducted a hearing, under Section 4244 of Title 18 U.S.C., as to the mental competency of the defendant. The defendant was present in person and was represented by counsel appointed for him by the court. The two psychiatrists appointed by the court to examine the defendant testified that in their opinion the defendant was not insane or mentally incompetent to stand trial. Dr. Charles E. Smith, Chief of the Psychi-

atric Service at the Medical Center, testified at the hearing in support of the diagnosis made and conclusions reached by the Neuropsychiatric Staff of the Medical Center in their report of July 8, 1954, and in prior reports that the defendant was mentally incompetent to stand trial.

The court on July 30, 1954, entered the order under review, in which it found: (1) that the defendant was insane and mentally incompetent to stand trial; (2) that if released he probably would endanger the safety of officers, the property, or other interests of the United States; and (3) that no suitable arrangements for the custody and care of the defendant, other than commitment to the custody of the Attorney General, were presently available.

The court granted the defendant leave to appeal in forma pauperis from the order of July 30, 1954. Mr. Burrell, who, on his own time and at his own expense, admirably represented the defendant in the District Court, has furnished us with an excellent brief on behalf of the defendant, in which it is argued that Sections 4244, 4246, 4247 and 4248 of Title 18 U.S.C. are unconstitutional, and that the order appealed from is unlawful.

There can be no question that the procedure followed by the District Court conformed to the provisions of these sections. The court accorded the defendant the psychiatric examination and the hearing as to his mental competency required by Section 4244. The court made a determination that the defendant was mentally incompetent to stand trial, in conformity with Section 4246. That section provides that when such a determination is made, "the court may commit the accused to the custody of the Attorney General * * * until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law." The section further provides: "And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided." Just what conditions specified in Section 4247 must exist to require the commitment of an accused who is mentally incompetent to be in the form prescribed by Section 4248, instead of that prescribed by Section 4246, is not entirely clear. The evident purpose of Section 4247 is to provide for the continued federal custody of an insane or mentally incompetent prisoner whose sentence is about to expire and who if released "will probably endanger the safety of the officers, the property, or other interests of the United States," and for whose care and custody no other suitable arrangements are available. We assume that the finding by the court that "If released, accused probably will endanger the safety of officers, the property, or other interests of the United States," and that no other suitable arrangements for his custody were available, justified, if it did not require, the form of order prescribed by Section 4248 and which was entered by the District Court.

The legislation with which we are concerned was enacted September 7, 1949, c. 535, 63 Stat. 686, and entitled, "An Act To provide for the care and custody of insane persons charged with or convicted of offenses against the United States, and for other purposes." The Act has an interesting history.

The Judicial Conference of the United States, at its September Session in 1942, "authorized the Chief Justice to appoint a committee to study, in cooperation with the Attorney General, the treatment accorded by the federal courts to insane persons charged with crime." Pages 18–19 of Report of the Judicial Conference, September Session 1942. The Committee appointed consisted of three members of the Judicial Conference: Senior Circuit Judges Calvert Magruder of the First Circuit, Learned Hand of the Second Circuit, and Curtis D. Wilbur of the Ninth Circuit, together with Circuit Judges Otto Kerner of the Seventh Circuit, and Charles C. Simons (now Chief Judge) of the Sixth Circuit, District Judge Merrill E. Otis of the Eighth Cir-

cuit, and Chief Justice Edward C. Eicher of the District Court of the United States for the District of Columbia. Judge Magruder was the Chairman of the Committee.

The Judicial Conference, at its September Session in 1943 directed that the Committee be continued. The Report of the Judicial Conference, September Session 1944, contains the following statement with reference to the work of the Committee:

"*Treatment of Insane Persons Charged with Crime in the Federal Courts.*—Upon an interim report by the committee on the subject, submitted by Judge Magruder, its chairman, the Conference adopted the following resolution:

" 'It appearing from a study by the Bureau of Prisons that a considerable number of persons are being sentenced for federal offenses and sent to prison who, because of their insanity, should not have been convicted, and who, indeed, because of their mental incapacity to participate rationally in their defense, should never have been arraigned or brought to trial,

" 'Resolved that the Conference recommend:

" '(1) That the district courts make fuller use of the sum provided in the annual appropriation for psychiatric examinations in occasional criminal cases at the instance of the court, for the purpose of procuring a competent and impartial psychiatric examination of accused persons brought before the court, where from the report of the probation officer or from other indications there is reason to believe that the accused may be mentally unsound;

" '(2) That wherever possible, arrangements should be made with suitable local hospitals and other institutions and agencies whereby in the discretion of the district courts persons charged with crime may be sent temporarily to such institutions for observation and examination as to their mental condition, as is now done in some districts; and further that the Administrative Office [of the United States Courts] be requested to survey the possibilities of this procedure in the various districts, and if agreeable to the respective district courts to arrange with the officials of local institutions for the use of their facilities for the examination of the mental soundness of persons charged with crime; that for this purpose the Administrative Office be authorized to use the services of the probation officers of the various districts.'

"The committee was continued and was instructed to study in particular the following matters: (1) psychiatric examinations as a matter of course in a class of cases, to be determined, in which the offenders are most apt to be insane; (2) a procedure in other cases for determining before trial the sanity of an accused person; and (3) the protection of courts from insane litigants and a suitable procedure for dealing with such persons."

Before the Committee made its report to the Judicial Conference in 1945, two of the members of the Committee had died—Judge Otis and Chief Justice Eicher. Their places on the Committee were filled by the appointment of Chief Justice Bolitha J. Laws of the District Court for the District of Columbia, and Judge Carroll C. Hincks, then District Judge for the District of Connecticut (now a Judge of the United States Court of Appeals for the Second Circuit). All members of the Committee joined in a comprehensive report,[1] dated July 30, 1945, to the Judicial Conference at its September Session in 1945.

---

I. The Report of the Committee pointed out that the federal statutes prescribed no procedure for determining an accused's mental competence to stand trial; that it was desirable that a definite procedure be established; that, in the absence of any

The Report of the Judicial Conference, September Session 1945, makes the following reference to the Committee Report and the action taken upon it:

"*Treatment of Insane Persons Charged with Crime in the Federal Courts.*—The Conference received and approved the report of the committee on this subject, submitted by Judge Magruder, its chairman.

"The committee reported that it had under consideration proposals for legislation dealing with procedure for determining the sanity of an accused person. The committee presented a revised draft of a bill,

prescribed procedure, the courts had dealt with the problem in various ways, as shown by the cases of Youtsey v. United States, 6 Cir., 97 F. 937; United States v. Harriman, D.C.S.D.N.Y., 4 F.Supp. 186; United States v. Chisolm, C.C.S.D. Ala., 149 F. 284, and other cases; that when a court has determined that an accused is incompetent to be brought to trial because of insanity, the question arises as to what is to be done with the accused, who is in lawful custody of the federal government, charged with a federal offense; that it seems clear, provided the requisites of due process are satisfied, that the federal government would have power to confine such an accused to a mental hospital pending his restoration to sanity; but that such a person could not be committed to a mental institution for an indefinite period without a judicial determination of his present insanity, after notice and opportunity to be heard,—citing Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222.

The Report states:

"If the accused's mental disability appears not to be a transitory condition, but in all likelihood he will, because of his insanity, never be brought to trial, it would seem that as a general rule the federal government should not assume responsibility for his hospitalization merely because he has been accused (but not convicted) of a federal crime. Normally such a person should be turned over to the state of his domicile to be confined in a state mental hospital if hospitalization is called for.

"But there may be cases where the accused's domicile cannot be satisfactorily established and where no state will assume responsibility for his care. The federal government may then be faced with the practical situation that it has lawful custody of a person whom it is not safe to let at large."

The Report also states that there should be some provision of law authorizing the continued confinement of insane criminals upon the expiration of their terms of confinement, where it would be dangerous to turn them loose upon society and where no state will assume responsibility for their custody.

The Report further states that the Committee had considered proposals for legislation dealing with the whole problem; that the Committee had not been ready to recommend legislation to the Judicial Conference in 1944; that since that time the draft which the Committee had had under consideration, together with comments and criticisms, had been submitted to the Attorney General and revised; that the Committee did not give final approval to the revised draft; that it should first be circulated among the federal district and circuit judges for their comments and criticisms, and the Committee should then consider whether further revisions were desirable; that that is what the Committee proposed to do if the Conference believed that the revised draft statute, appended to the Report, offered a promising working basis for legislation.

With reference to the revised draft of the proposed statute, the Report stated:

"The draft bill sets forth a procedure for raising the issue as to the mental competence of an accused and for the determination of such issue; it also makes provision for the disposition of an accused who has been judicially determined to be incompetent to stand trial. [Cf. 18 U.S.C. §§ 4244, 4246.] The bill also provides a procedure for setting aside a conviction where the issue of mental competency was not raised and determined before or during the trial, and where such mental incompetence became apparent after the defendant was sent to prison. [Cf. 18 U.S.C. § 4245.] Further, the bill makes provision for federal commitment, under narrowly defined conditions, of insane prisoners whose sentence is about to expire and whose release might endanger 'the safety of the officers, currency, domain or other interest of the United States.' [Cf. 18 U.S.C. §§ 4247, 4248.] These are the main features of the bill."

It is unnecessary to set forth or summarize the revised draft of the proposed statute referred to in the Report. The draft furnished virtually the entire basis, verbally and otherwise, for the legislation here involved.

prepared in 1944, dealing with cases where insanity occurs after conviction, and with cases of insane persons whose sentences have expired. But the committee did not give its final approval to the draft in its present form, suggesting that it be circulated among the circuit and district judges so that their suggestions may be considered. The bill sets forth a procedure for raising the issue of the mental competence of an accused and for its determination; it makes provision for the disposition of an accused who has been judicially determined to be incompetent before trial; it provides a procedure for setting aside a conviction where the issue of mental competency has not been raised or determined before or during the trial, and where mental incompetency becomes apparent after the defendant has been committed to prison. Further, the bill makes provision for the commitment of any insane prisoner whose sentence is about to expire and whose release might endanger 'the safety of the officers, currency, domain or other interests of the United States.' The draft makes no provision for 'psychiatric examinations as a matter of course in a class of cases, to be determined, in which the offenders are most apt to be insane', a matter which the committee was directed to consider further by the action of the Judicial Conference of last year. The committee reported that a study of the available federal statistics of the incidence of insanity revealed no significant differences referable to the classes of offenses committed."

By letter dated January 23, 1946, the Director of the Administrative Office of the United States Courts sent to each federal Circuit and District Judge a copy of the report of the Committee, to which was attached the tentative draft of the proposed bill, a letter of September 24, 1945, from the Honorable Tom Clark, Attorney General (now Mr. Justice Clark of the Supreme Court of the United States), to Judge Magruder, analyzing and approving the legislation tentatively suggested by the Committee, and a letter to Judge Magruder from Mr. James V. Bennett, Director of the Bureau of Prisons, dated June 25, 1945, also approving the proposed legislation. The Director of the Administrative Office in his letter of January 23, 1946, to the Circuit and District Judges stated that the Committee's report had been received and approved by the Judicial Conference. He invited suggestions relative to the subject matter from each federal judge.

On page 18 of the Report of the Judicial Conference for its October Session of 1946, appears the following:

"*Treatment of Insane Persons Charged with Crime in the Federal Courts.*—The Conference approved, with certain amendments, the draft of a bill submitted by the Committee of the Conference on this subject which provides for a method of treatment, care, and custody of insane persons charged with or convicted of offenses against the United States. The bill, as amended, sets forth a procedure for raising the issue of the mental competence of an accused and for its determination; it makes provision for the disposition of an accused who has been judicially determined to be incompetent before trial. Procedure is prescribed for the setting aside of a conviction where the issue of mental competency has not been raised or determined before or during the trial, and where mental incompetency becomes apparent after the defendant has been committed to prison. The bill provides for the commitment to the Attorney General, upon a judicial proceeding and after a hearing, of any insane prisoner whose sentence is about to expire and whose release might endanger the safety of the officers, the

property, or other interests of the United States."

At its session in September, 1947, the Judicial Conference reaffirmed its previous recommendation regarding proposed legislation relating to "Treatment of insane persons charged with crime in the Federal Courts."

The Report of the Regular Annual Meeting of the Judicial Conference held September 27–29, 1948, recites:

"*Treatment of Insane Persons Charged with Crime in the Federal Courts.*—The Conference reaffirmed its interest in legislation providing for a method of treatment, care, and custody of insane persons charged with or convicted of offenses against the United States, and approved the bill which passed the Senate (S. 850) on June 10, 1948."

This history of the legislation in question demonstrates that it was no hastily conceived solution for some inadequately and superficially considered problem, but was the result of a prolonged and painstaking study by a group of extremely competent federal judges of long experience and from different Circuits, and that the legislation had the approval of the Judicial Conference of the United States, of the Attorney General of the United States, and of the Director of the Bureau of Prisons of the United States.

The report of the House Committee on the Judiciary, recommending the enactment of the legislation, which report can be found on pages 1928–1930 of Vol. 2 of U. S. Code Congressional Service, 81st Congress First Session 1949, states:

"The bill is the product of a long study, by a committee of the Judicial Conference of the United States, working in close cooperation with representatives of the Department of Justice, of the problem of the care and custody of insane persons charged with or convicted of offenses against the United States."

The House report incorporates a written statement of the Director of the Bureau of Prisons to the House Committee, explaining the sections of the bill and the need for them. The closing paragraph of the statement reads as follows:

"This bill is the result of prolonged, patient, and painstaking study and reflection by a constituted committee of judges (headed by United States Circuit Judge Calvert Magruder) and representatives of the Attorney General. Its early enactment would be of substantial assistance in clarifying a constantly recurring and vexatious problem."

Judge Ridge, of the United States District Court for the Western District of Missouri, who, on behalf of that court, conducted the proceedings and entered the order now under review, has consistently sustained the constitutionality and effectiveness of the legislation here involved and the validity of commitments made under its provisions. Higgins v. McGrath, D.C.W.D.Mo., 98 F.Supp. 670, 671, 674; Kitchens v. Steele, D.C.W.D. Mo., 112 F.Supp. 383; and Craig v. Steele, D.C.W.D.Mo., 123 F.Supp. 153.

The views of Judge Ridge are concisely stated in Craig v. Steele, supra, at page 155 of 123 F.Supp., as follows:

"Once it is conceded that the Federal Government has the power to protect its sovereignty by enactment of the Criminal Code, it must follow that the Federal Government has powers to prescribe regulations concerning that Code, the same as a State Government would have concerning a subject within its reserved powers. Hence, the Federal Government has the power to provide for the commitment of mental defectives found violating Federal laws, 'until the accused shall be mentally competent to stand trial' Sec. 4246, supra, or if he is found to be permanently insane so that he will in all probability never be able to stand trial on a charge made against him, confine such a person 'until (his) mental competency * * * shall be restored or until the mental

condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, or until suitable arrangements have been made for the custody and care of the prisoner by the State of his residence, whichever event shall first occur', as provided by the Congress in Sections 4246, 4247 and 4248, supra. For the Congress to so provide is not to commit a citizen for insanity as contended by petitioner, but to protect the sovereignty of the United States from law violators."

Judge Duncan, on the other hand, speaking for the same court, in Edwards v. Steele, D.C.W.D.Mo., 112 F.Supp. 382, 383, which involved the validity of the commitment under Section 4246 of an accused to the custody of the Attorney General, said:

"The petitioner alleges that he is being illegally restrained of his liberty in that he has not been convicted of any offense and that he is being confined solely on the ground that he is insane. The court has heretofore passed on this question in numerous cases, the first of which was Dixon v. Steele, D.C., 104 F. Supp. 904. It is the opinion of this court, as stated in that case, that the United States courts may not commit persons who have not been convicted of any offense to confinement which might be for their natural lives in many instances, and that the adjudication and confinement of insane persons is a state function and not the function of the United States."

See, also, Dixon v. Steele, D.C.W.D.Mo., 104 F.Supp. 904, 908, 912–913. Judge Duncan is of the opinion that the legislation in suit authorizes the federal government to confine innocent persons solely because of their insanity and is an encroachment upon the reserved power of the states to deal with insane persons.

Judge Whittaker, speaking for the District Court for the Western District of Missouri, in Wright v. Steele, 125 F. Supp. 1, 3–4, which involved the commitment under § 4246 of an accused found to be insane, said:

"Sections 4244 and 4246, Title 18 U.S.C., obviously were enacted as a shield to protect a person, temporarily mentally incompetent, from having to stand trial, upon charges which if committed by a sane person would constitute a Federal offense, until such accused has recovered from his temporary incompetence sufficiently to understand the charges against him and to intelligently assist in his own defense, and care must be taken to see that the period consumed in determining his competency or incompetency to stand trial upon those charges does not approximate, and certainly not exceed, the probable sentence—less 'good' time—he would have received and served had he pleaded, or been found, guilty as charged, for that would be to turn the statutory shield into a sword."

In the Wright case Judge Whittaker was following substantially Wells, by Gillig v. Attorney General, 10 Cir., 201 F.2d 556, and Higgins v. United States, 9 Cir., 205 F.2d 650.

The Court of Appeals for the Tenth Circuit in the Wells case concluded, pages 559–560 of 201 F.2d, that the federal government had the power to make provision for the proper care and treatment of persons who become temporarily insane while in the custody of the United States awaiting trial upon criminal charges, and to make provision for the care and treatment of federal prisoners who become mentally incompetent after conviction; and that Section 4246, in order to preserve its validity, was to be construed as authorizing the commitment of only an accused who was temporarily insane.

Judge Huxman dissented in the Wells case. He agreed with Judge Ridge that

the right of a sovereign to deal with insane persons charged with or convicted of crime was incidental to the power to enact and administer a criminal code, and that the right does not depend upon the probable duration of the insanity of the offenders. Judge Huxman, among other things, said at page 563 of 201 F.2d:

"I accordingly conclude that there is no constitutional inhibition against the government preventing it from making adequate, proper and humane provision for the care, custody and treatment of incompetent persons properly brought into court under the government's criminal jurisdiction, irrespective of whether that incapacity is of short or long duration. How that duty shall be discharged is for the government to say and the incompetent may not complain because the government chooses to provide for him in a proper institution of its own rather than to engage in a tug-of-war with the state to see whether it will take custody or control of him."

The Court of Appeals for the Ninth Circuit, in Higgins v. United States, supra, 205 F.2d 650, approved the ruling in the Wells case that Congress could provide for the care of those who become temporarily insane while awaiting trial and for those who become insane while in custody after conviction. What the Ninth Circuit did in the Higgins case was substantially what the Tenth Circuit had done in the Wells case, namely: direct the District Court to determine whether the accused could or could not within a reasonable time be tried, and either to try him without unnecessary delay if that could be done, or otherwise to release him from federal custody.

It is safe to say that the validity and effectiveness of the statutory provisions which are under attack are not subject to question in so far as they provide for the commitment to the custody of the Attorney General of one charged with a federal offense whose mental incompetency to stand trial is temporary. It

might even be doubted that statutory authority to provide for the temporary custody of the temporarily insane held for trial would be necessary.

The controversial question is whether Congress has the power to provide for the care and custody of a mentally incompetent accused whose incompetency to stand trial is or may be permanent or of indefinite duration.

██ The Government certainly has the right to take into custody under a warrant any person properly charged with having committed a federal offense, without first attempting to determine whether he is sane or insane. See Rule 9(a), Federal Rules of Criminal Procedure, 18 U.S.C.A. Once in federal custody, the right of an accused to release before trial is a conditional one. Stack v. Boyle, 342 U.S. 1, 4–5, 72 S.Ct. 1, 96 L.Ed. 3. No one could reasonably contend that a federal court would be compelled to admit to bail or to release on his own recognizance an accused charged with a federal offense, who, after being apprehended, was found to be insane or mentally incompetent to stand trial. The lawfulness of the apprehension and detention of a person charged with a federal offense is not dependent upon his mental condition.

██ The history of the legislation in suit demonstrates that the problem with which the Judicial Conference and Congress were concerned was not the social problem of caring for the insane, but the problem of devising in the interest of federal law enforcement some practical and legal method of dealing with prisoners, in lawful custody, charged with or convicted of federal crimes, whose mentality was such that they could not be dealt with as persons of normal intellect, and who would be a menace to society if released. The Government, in the administration of its criminal laws and the gathering in of those who violate them, inevitably finds itself with insane, mentally defective and mentally unstable prisoners in its hands. The defendant in this case is a typical

example. He apparently has a penchant for robbing post offices and otherwise violating the law. The State of Ohio will not care for him. Apparently its only solution of his problem was to turn him loose upon society. The fact that the defendant may have been, and probably was, mentally irresponsible at the time he robbed the Post Office in Kansas City did not make his arrest or detention illegal. Insanity which will enable a law violator to escape conviction is not a license to violate the law, nor does it disable the Government from protecting itself and society from an insane and potentially dangerous offender by putting him where he can do no harm, provided the issue of his mental incompetency has been judicially determined

The legislation under attack enables the federal district courts to determine, after due notice and hearing, the mental condition of persons in federal custody, charged with federal offenses, who are suspected of being mentally incompetent, and to provide for the care of those who are found to be incompetent to stand trial by committing them to the custody of the Attorney General when that appears to be the only or the best way available for providing for their care and custody.

We think that (1) the validity of the legislation in suit does not in any way depend upon the probable duration of the mental incompetency of federal prisoners who, in conformity with Section 4244, are found to be mentally incompetent; (2) the legislation was intended to mean exactly what its language imports; and (3) Congress did not, in enacting it, violate the due process clause of the Fifth Amendment or encroach upon the police power of the States reserved to them by the Tenth Amendment. When the federal government exerts any of its constitutional powers, "no valid objection can be based upon the fact that such exercise may be attended by the same incidents which attend the exercise by a state of its police power, or that it may tend to accomplish a similar purpose." Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 156, 40 S.Ct. 106, 108, 64 L.Ed. 194.

The national government has the undoubted right to define federal crimes; to provide for the administration and enforcement of its criminal laws; to prescribe the penalties which will be incurred by those violating them; to furnish institutions where such violators can be confined; and generally to do whatever reasonably and lawfully can be done to protect society against such offenders. We have no doubt that as a necessary incident to the power to provide for the enforcement of the criminal laws of the United States, Congress had the power to enact the legislation in suit providing means for the commitment to the custody of the Attorney General of insane or mentally incompetent persons, such as the defendant, charged with offenses against the United States. We regard the means adopted by Congress as having a real and substantial relation to the enforcement of the federal criminal laws, and as not unreasonable, arbitrary or capricious.

Our conclusion is that the statutes under review are constitutional and that the order appealed from is valid.

This Court and the District Court are under obligation to Mr. Burrell for representing the defendant. The questions raised by this appeal are important and controversial. The defendant may apply to the Supreme Court for certiorari without the payment of Clerk's fees or costs in this Court.

The order appealed from is affirmed.

VAN OOSTERHOUT, Circuit Judge (dissenting).

The majority opinion admirably sets out the legislative history of sections 4244–4248, inclusive, Title 18 U.S.C., and clearly demonstrates the need for such legislation. I fully agree that one charged with a federal offense who is mentally incompetent to stand trial may be held in custody for a reasonable time awaiting trial, and that such right should

be liberally construed. However, when it appears with reasonable certainty that the defendant is permanently insane and that he will never be mentally competent to stand trial, constitutional power on the part of the Government is lacking to incarcerate the defendant for an indefinite period, likely the remainder of his life. Under such circumstances, it would appear that no further purpose exists for his detention to await a criminal trial which can never take place. The defendant is presumed to be innocent until proven guilty. If because of his insanity he can never be tried, he will have no opportunity to be adjudged not guilty generally or not guilty by reason of insanity. Undoubtedly, in many cases the defendant found incompetent to stand trial would be able to establish that he was insane at the time of the commission of the alleged offense and consequently that he is not a criminal at all. An insane person is an ill person.

After a judicial determination of permanent insanity the defendant is being held because of his insanity rather than to await trial for the crime charged. Section 4246, after providing for holding of defendant until he is competent to stand trial, then provides: "And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided." Section 4247 pertains to holding of insane convicted defendants whose terms are about to expire. Section 4248 provides in part:

"Whenever a person shall be committed pursuant to section 4247 of this title, his commitment shall run until the sanity or mental competency of the person shall be restored or until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, or until suitable arrangements have been made for the cus-

tody and care of the prisoner by the State of his residence, whichever event shall first occur."

The section 4248 commitment appears to be bottomed upon insanity rather than criminality. If the defendant is to be held only to await trial, there is no necessity or purpose in the last sentence of section 4246 hereinabove quoted.

The decided cases on the issue in controversy here are cited and fairly discussed in the majority opinion. The Courts of Appeals of the Ninth and Tenth Circuits have held that the Government has no constitutional right to continue to hold an accused defendant who has not been convicted and who has been found to be permanently insane. Wells, by Gillig v. Attorney General, 10 Cir., 201 F.2d 556; Higgins v. United States, 9 Cir., 205 F.2d 650. The opinions of Judges Duncan and Whittaker of the Western Division of Missouri, cited in the majority opinion, are to the same effect. The only contrary holdings are Judge Ridge's opinions and the dissenting opinion of Judge Huxman in the Wells case.

The Constitution of the United States has not delegated the care of the insane to the United States, nor prohibited such power to the States. Under the Tenth Amendment to the Constitution the duty and responsibility in connection with insane persons rest with the States.

I realize that this case presents a difficult situation and that as a practical matter much can be said in favor of the result arrived at by the majority. No bad motive on the part of the Government in retaining custody is shown. It may well be for the defendant's best interest, as well as that of the public, that he remain in the Government hospital. However, as I am convinced that the United States has no jurisdiction over permanently insane persons for an indefinite period this conclusion can not be altered by practical considerations.

I would reverse this case and remand it with directions to release the defendant from federal restraint.