UNITED STATES of America, Appellee,

v.

Vito DeBELLIS, Defendant, Appellant.

No. 81–1224.

United States Court of Appeals,
First Circuit.

Argued April 9, 1981.

Decided April 21, 1981.

Owen S. Walker, Federal Public Defender, Boston, Mass., with whom Steven A. Sussman, Asst. Federal Public Defender, Boston, Mass., was on memorandum, for defendant, appellant.

Paul F. Healy, Jr., Asst. U. S. Atty., Boston, Mass., for appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

In this case we order that a criminal defendant who has been detained solely for determination of his competency to stand trial for a period longer than the maximum sentence possible under the crime with which he is charged either be released or be granted an expedited hearing in accordance with 18 U.S.C. §§ 4246 and 4247 to determine whether he is dangerous to himself or others.

Appellant was arrested in the federal courthouse in Boston on January 12, 1981, allegedly while making threatening statements to a magistrate and having a hammer in his possession. He was charged with creating a disturbance on federal property, a crime carrying a maximum possible sentence of 30 days in prison, a $50 fine, or both. 40 U.S.C. § 318(c). He was unable to meet the $2500 bail set, and has remained in custody thereafter. The district court ordered him to submit to a psychiatric examination as to his competence to stand trial and his sanity at the time of the alleged offense. The psychiatrist's report, dated January 15, gave the opinion that appellant was "not responsible at the time of the alleged offense", and further asserted that he was "still suicidal" and "dangerous to himself as well as others".

On January 22, over appellant's objection, the court ordered him committed to the Medical Center for Federal Prisoners at

Springfield, Missouri, for a period not to exceed sixty days, for another determination of his competency and sanity. On March 16, the Center submitted a report concluding that the appellant was mentally incompetent to stand trial and was not responsible for his acts at the time of the alleged offense. Appellant was returned to Boston, and the district court held a hearing on April 6 and 7 at which it considered the report, the appellant's testimony, and arguments of counsel. The court did not seek to have appellant select another psychiatrist and no examining psychiatrist was available for cross-examination. The appellant requested that he be either discharged or committed under the Massachusetts mental health commitment laws. The court, however, found appellant incompetent to stand trial and ordered him committed for a further 30-day period to Missouri for assessment of his competency, his prospects for becoming competent and his potential dangerousness. Appellant filed a notice of appeal the same day, and we agreed to give the case expedited consideration.

■ The issue presented is framed by both statutory and constitutional considerations. The statutory scheme, 18 U.S.C. §§ 4244–4248, may be summarized in two principal parts with an important link between them. First, § 4244 allows a court to have an accused committed for a "reasonable period" for an examination as to whether he is mentally competent to stand trial, and the first sentence of § 4246 authorizes a court upon a finding of incompetency to commit the accused to the custody of the Attorney General "until the accused shall be mentally competent or until the pending charges against him are disposed of according to law".

Second, § 4247, by its terms applicable only to "a prisoner whose sentence is about to expire", provides for examination by two psychiatrists (one selected by the court and one by the prisoner), and for a hearing at which, *inter alia*, those psychiatrists will be available for cross-examination by the prisoner. The court is then to determine whether three specified conditions exist:

that "the prisoner is insane or mentally incompetent", that "if released he will probably endanger the safety of the officers, the property, or other interests of the United States", and that "suitable arrangements for the custody or care of the prisoner are otherwise unavailable". If the court finds those conditions to exist it may commit the prisoner to the custody of the Attorney General, whereupon § 4248 provides that he shall be released as soon as any one of the three conditions is no longer satisfied, and also provides that the Attorney General may transfer such a prisoner to state custody at any time.

Finally, the last sentence of § 4246 links these two parts, providing that if the court finds after a hearing under § 4244 (applicable to all defendants) that the accused meets the conditions specified in § 4247 (on its face limited to prisoners), then "the commitment shall be governed by § 4248". *See Greenwood v. United States*, 350 U.S. 366, 374, 76 S.Ct. 410, 414, 100 L.Ed. 412 (1956); *Lopus v. United States*, 319 F.2d 855 (9th Cir. 1963); *Carmen v. Settle*, 209 F.Supp. 64, 65–66 (W.D.Mo.1962).

There is a separate federal statute that bars the subsequent sentencing of a person in appellant's position to any further time in prison. This statute, 18 U.S.C. § 3568, provides that "credit toward service of a sentence" must be given for "any time spent in custody in connection with the offense or acts for which sentence was imposed", and we think appellant's time served so qualifies. *See Cephus v. United States*, 389 F.2d 317 (D.C.Cir.1967); *Sawyer v. Clark*, 386 F.2d 633 (D.C.Cir.1967); *but see Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976). At the same time, of course, we express no opinion as to whether appellant could subsequently be prosecuted for the offense charged.

■ Beyond this statutory consideration, we think two distinct constitutional protections are brought to bear in this situation. The first (related to the first half of the statutory scheme, § 4244, and the first sentence of § 4246) is designed exclusively to safeguard the rights of an accused and

turns solely on the question of competency. As a result, we think the provisions cannot be read to justify the commitment of an accused for a period longer than the maximum possible sentence he faces. Because it would clearly violate the constitution to imprison even a convicted person for a longer period than allowed by statute for commission of a crime, the only basis which could justify confinement in these circumstances is an accused's mental state. But confinement on the basis of mental state (i. e., involuntary civil commitment) brings into play the second set of constitutional protections. Under these principles it is clear that no person may be involuntarily confined on grounds of mental illness unless he is found to present a danger to himself or others, *see Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1084, 60 L.Ed.2d 323 (1979); *Lynch v. Overholser*, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962), whether or not he stands accused of a crime, *Jackson v. Indiana*, 406 U.S. 715, 723–30, 92 S.Ct. 1845, 1850–1854, 32 L.Ed.2d 435 (1972), and even then only for so long as he remains dangerous. *United States v. Curry*, 410 F.2d 1372 (4th Cir. 1969). With no provision for such findings, the very purpose and legitimacy of competency determinations—a procedure for protecting the accused—foreclose their use as a means of committing accused persons for longer than permitted as a sentence.

Courts have long held that the period of commitment for determination of competency to stand trial must be "reasonable", *see Jackson v. Indiana, supra*, 406 U.S. at 738, 92 S.Ct. at 1858; *Cook v. Ciccone*, 312 F.Supp. 822 (W.D.Mo.1979); *Martin v. Settle*, 192 F.Supp. 156 (W.D.Mo.1961), and indeed may continue only until it is determined whether there is a reasonable chance an accused will be able to stand trial in the near future. *Jackson v. Indiana, supra; United States v. Wood*, 469 F.2d 676 (5th Cir. 1972). No case that we have found has presented a factual setting in which commitment for competency determination alone has exceeded the maximum possible sentence, and we think our holding that it may not do so merely represents an inevitable application of the reasonableness limitation to that setting. Every court to have considered this specific question in dictum has reached the same conclusion. *Carmen v. Settle, supra*, 209 F.Supp. at 65–66; *Wright v. Steele*, 125 F.Supp. 1, 3–4 (W.D. Mo.1954), *quoted in Greenwood v. United States*, 219 F.2d 376, 385 (8th Cir. 1955), *aff'd*, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956).

In light of this conclusion, we turn briefly to the second half of the statutory scheme, that provided by §§ 4247 and 4248. As discussed above, these provisions are applicable to nonprisoner commitment by operation of the second sentence of § 4246. The fact that this procedure provides a ready alternative to the procedures used in this case might suggest that appellant has won a hollow victory. But those sections provide added procedural safeguards to a party, and, most importantly for purposes of involuntary commitment, require findings of precisely the constitutionally necessary predicates for such commitment that as noted above are lacking in § 4244. *See Greenwood v. United States, supra*, 350 U.S. at 373–75, 76 S.Ct. at 414–15. *United States v. Geelan*, 520 F.2d 585 (9th Cir. 1975); *United States v. Curry, supra*, 410 F.2d at 1372; *cf. United States v. Pardue*, 354 F.Supp. 1377, 1382 (D.Conn.1973) (long term commitment under § 4248 may constitutionally require treatment rather than simple confinement). Section 4248, of course, also allows transfer of a party to state authorities. While it is true that appellant's initial psychiatric evaluation included an unsolicited finding of dangerousness, his current commitment is pursuant to a second evaluation that included no such finding and to a hearing that did not include the procedural safeguards of § 4247.

Accordingly, appellant must either be granted a hearing pursuant to § 4247 or be released. *See United States v. Wood, supra*. The district court's order of April 7, in committing appellant for another 30 days, directs an examination into his competency, his chances of becoming competent within a reasonably short period, and whether or not he would be dangerous if released. While

an affirmative response to the last query would normally be the logical prelude to a § 4247 hearing, the lapse of time that has already taken place dictates that any § 4247 hearing cannot be delayed 30 additional days or more without the strongest possible showing that a report on dangerousness cannot be sooner obtained. If no such showing is made, a § 4247 hearing should be scheduled as expeditiously as possible.

*The order is therefore vacated and the case remanded to the district court for further proceedings in accordance with this opinion.*