### HIGGINS v. UNITED STATES.
#### No. 13497.

United States Court of Appeals,
Ninth Circuit.

June 29, 1953.

Rehearing Denied Sept. 8, 1953.

---

John Michael Higgins, Los Angeles, Cal., in pro. per. and Morris Lavine, Los Angeles, Cal., for appellant.

Morris Lavine, Los Angeles, Cal., amicus curiae.

Walter S. Binns, U. S. Atty., Ray H. Kinnison, Norman W. Neukom and Lelia F. Bulgrin, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

STEPHENS, Circuit Judge.

John Michael Higgins was indicted on June 7, 1950, for sending postal cards allegedly containing "libelous, scurrilous, and defamatory" language through the United States mails in violation of Title 18 U.S. C.A. § 1718. When Higgins appeared before the court for arraignment and plea, the court of its own motion ordered that he be examined by court-appointed psychiatrists to determine his mental competency "to be [able] to understand the proceedings against him [and] properly to assist in his own defense". Title 18 U.S.C.A. § 4244. Thereafter, the court ordered a hearing and appointed counsel to represent Higgins at the hearing. To avoid confusion, we shall refer to Higgins as defendant. The testimony of two qualified psychiatrists who had theretofore examined defendant was received, as was the testimony of Higgins himself and one witness on his behalf. Defendant was found "insane and mentally incompetent" and "unable to make a defense to the charge" in the indictment. He was then committed to the custody of the Attorney General until he should become mentally competent or until further order of the court. He was hospitalized at the United States Medical Center for federal prisoners at Springfield, Missouri, for treatment. No appeal was taken.

While at the institution in Springfield, defendant filed in the United States District Court for the Western District of Missouri, a petition for habeas corpus requiring the goverment to show cause why he should not be released from custody or tried on the original criminal complaint. The court found that defendant's commitment had been regular and legal, but that he had apparently regained his sanity to the extent that he could "probably" stand trial on the charges pending against him. Higgins v. McGrath, D.C., 1951, 98 F.Supp. 670. The court made no determination as to whether defendant was mentally fit to stand trial but ordered that he be returned at once to the United States District Court for the Southern District of California, wherein defendant had been originally committed, and which court had retained jurisdiction.

Defendant was returned to the Southern California District Court and that court, Judge Westover presiding, ordered a new hearing for the purpose of ascertaining

whether defendant was mentally fit for trial. It should be clearly understood that the hearing before Judge Westover was not a continuation of the Missouri habeas corpus proceeding but was a hearing under the same code sections under which the original commitment to the Medical Center was had and in the same case. Title 18 U.S.C.A. §§ 4244, 4246. The court determined that defendant "* * * is, at the present time, an insane and metally incompetent person. * * * [T]hat by reason of said defendant's mental incompetency, said defendant is unable to make a defense to the charges contained in the indictment herein." Commitment was then made to the Attorney General "for the purpose of observation and treatment until such time as said defendant shall become mentally competent or until the further order of the court."

Defendant is restrained under said order and has filed a notice of appeal therefrom.

The defendant has raised many points upon which he seeks reversal, among them the unconstitutionality of §§ 4244 and 4246, the denial of a jury trial on the issue of insanity, the propriety of his arrest and lack of due process.

We have been somewhat puzzled as to whether the order appealed from is in fact a final order subject to appeal. Title 28 U.S.C.A. § 1291. On the authority of Cohen v. Beneficial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, we have resolved the doubt in favor of reviewing the order. Inasmuch as the defendant's mental disturbance may be of long duration, perhaps for life, and his trial may therefore be delayed over a very long time, and perhaps forever, the order adjudging him incompetent for trial has a phase of finality in it.

The order does not purport to merely refuse trial from day to day at the convenience of the court or for a short period of time to enable defendant to recover from a temporary upset. It is, in nature, the kind of order which would never be reviewed on direct appeal after trial. The court in the Cohen case, supra, 337 U.S. at page 546, 69 S.Ct. at page 1225, says: "Nor does the statute permit appeals, even from fully con-

summated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case."

The defendant appears in *propria persona* but Mr. Morris Lavine was appointed to assist defendant at the trial and in this proceeding, and he has assisted defendant and the court with marked ability and application.

The record is voluminous, repetitious, and replete with motions, affidavits, and other documents and acts in character with a layman's law-learning acquired through the defendant's personal interest and the contagious fascination of delving into and, to his own satisfaction, dispelling the imaginary mysteries of the learned profession. Out of the *melange* we find defendant claiming that §§ 4244 and 4246 of Title 18 U.S.C.A., are unconstitutional, hence the order under them is void. The argument is that the federal government has no power to provide for the determination that a person is insane. However, no contention is made by anyone that the federal government has coordinate or exclusive power with or over a sovereign state in the general field of lunacy. But there can be no doubt that the federal Congress has the power to prescribe reasonable rules for the care of persons who are charged with federal crime and awaiting trial. Indeed, we think the trial court has inherent power in the matter without the aid of the statute.

We approve the expressions made in the case of Wells v. Attorney General,

10 Cir., 1953, 201 F.2d 556, 559, as follows: "The several states in their character as parens patriae have general power and are under the general duty of caring for insane persons. The prerogative is a segment of police power. In the exercise of such power, insane persons may be restrained and confined both for the welfare of themselves and for the protection of the public. And if the exactions of due process are met, such restraint and confinement do not violate any constitutional right of the individual. In re Dowdell, 169 Mass. 387, 47 N.E. 1033; Sporza v. German Savings Bank, 192 N.Y. 8, 84 N.E. 406; McMahon v. Mead, 30 S.D. 515, 139 N.W. 122; State v. Saffron, 146 Wash. 202, 262 P. 970; Ex parte Perry, 137 N.J.Eq. 161, 43 A.2d 885; People v. Janssen, 263 Ill.App. 101; Shapley v. Cohoon, D.C., 258 F. 752. While the care of insane persons is essentially the function of the states in their sovereign capacity as parens patriae, and while the federal government has neither constitutional nor inherent power to enter the general field of lunacy, Congress has the power to make provision for the proper care and treatment of persons who become temporarily insane while in custody of the United States awaiting trial upon criminal charges, and to make provision for the care and treatment of federal prisoners who become mentally incompetent during their incarceration after conviction. Estabrook v. King, 8 Cir., 119 F.2d 607; Jones v. Pescor, 8 Cir., 169 F.2d 853."

█ The trouble with defendant's contention is that while the text of the order is in the form of a judgment of insanity, it is actually much less than that. It certainly does not, in fact, judicially declare that defendant has the general status of lunacy. The restraint is only to the extent and until defendant is mentally fit for trial or other disposition is made in the premises. Since the order does not affect the status of defendant as to sanity but is limited in effect as just indicated, it follows that the attack on the constitutionality of §§ 4244 and 4246 and the attack on the legality of the order on the ground that defendant was entitled to a jury trial as to his sanity, fails, entirely.

[7] The order factually is based upon the testimony of eminent psychiatrists and specialists in brain pathology and upon the judge's own observation of defendant in court. The evidence amply supports the order. The statement of fact together with our holdings herein clearly indicates due process.

Upon the going down of the mandate, the court should promptly determine whether defendant is presently able mentally to stand trial or in the near future will be. Dependent upon the court's determination that defendant is or soon will be able to stand trial, he should be put to trial without unnecessary delay. If the court should determine that defendant is not and will not within a reasonable time be able to stand trial by reason of mental incapacity, he should be released from federal restraint, preferably to appropriate state authorities.

Affirmed.