UNITED STATES of America, Plaintiff,

v.

George D. HICKS, Defendant.

No. 90–8071–CR.

United States District Court,
S.D. Florida.

Aug. 13, 1992.

Neil Karadbil, Asst. U.S. Atty., West Palm Beach, Fla., for U.S.

Fletcher Peacock, Asst. Federal Public Defender, Ft. Lauderdale, Fla., for defendant.

## ORDER

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon Defendant George D. Hicks' Motion to Compel Government Compliance with 18 U.S.C. § 4246, filed June 19, 1992; and after a status conference held before the undersigned United States District Judge on July 23, 1992, at 9:00 am.

### I. Background

The United States Secret Service charged Defendant George D. Hicks ("Hicks"), on January 13, 1989, with threatening the then president-elect, George Bush, in violation of 18 U.S.C. § 871. Hicks allegedly made an oral threat to take the life of George Bush, stating "If I see him, I'll kill him." Hicks has also stated that he "was Christ" and that he had been brought back to life several times by extraterrestrials. On January 18, 1989, Magistrate Judge Ann E. Vitunac committed Hicks for a 45–day psychological evaluation, pursuant to 18 U.S.C. §§ 4241 and 4242. Magistrate Vitunac also ordered pretrial detention for Hicks.

On April 20, 1989, the authorities at the Federal Medical Center in Rochester, Minnesota, reported to the Court that Hicks was incompetent to stand trial and was not responsible for his acts at the time of the offense. Upon receiving the April 20, 1990 report, Magistrate Vitunac found, in an Order dated May 19, 1989, that Hicks was not competent to stand trial.

Magistrate Vitunac further committed Hicks for a determination as to whether there was a substantial probability that Hicks would regain the capacity to stand trial in the foreseeable future. On October 5, 1989, the Rochester authorities reported to the Court that Hicks was still not competent and was not likely to become competent in the foreseeable future.

On November 8, 1989, Hicks' counsel motioned the Court for a determination as to Hicks' release eligibility, pursuant to 18 U.S.C. § 4246. Magistrate Vitunac ordered the Rochester authorities to prepare such an opinion. After further evaluation of Hicks and a review of his psychological history, the Rochester authorities concluded, in a report dated February 18, 1990, that Hicks did not pose a substantial risk of bodily injury to another person or serious damage to the property of another. The authorities recommended that Hicks be re-

leased to his mother's custody with the condition of his active participation in psychiatric aftercare.

Upon motion by Hicks' counsel, Magistrate Vitunac set the issue of Hicks' dangerousness, or lack thereof, for hearing on September 10, 1990. Prior to that hearing, however, the Government obtained an indictment of Hicks, thereby moving the jurisdiction of that issue to the District Court.

On October 1, 1990, Hicks' counsel filed a "Motion for Hearing to Determine Defendant's Competency to Stand Trial and Whether the Defendant Poses a Substantial Risk of Harm to Other Persons or Their Property if Released." While awaiting a hearing before the District Court, Hicks began to refuse his psychotropic medication at MCC, Miami. Judge Norman C. Roettger, Jr. held a hearing on February 28, 1991. By the date of this hearing Hicks' mental condition had destabilized significantly. After the hearing Judge Roettger held the following in an order, dated March 4, 1991:

1. There is insufficient information to determine whether the defendant is competent to stand trial at this time; and

2. There is insufficient information to determine whether the defendant's release under 18 U.S.C. § 4246(e) would no longer create a substantial risk of bodily injury to another person or serious damage to property of another.

Judge Roettger then ordered the following:

1. That Hicks is to be committed to the custody of the Attorney General for the purposes of preparing a current evaluation of Hicks' mental competency to stand trial as defined by 18 U.S.C. § 4241, and of preparing a current evaluation of whether Hicks would be a danger if conditionally released pursuant to 18 U.S.C. § 4246. The period of evaluation shall not exceed forty-five (45) days. The Court recommends that the Attorney General use the Federal Medical Center at Rochester, Minnesota because of that facility's previous treatment of Hicks;

2. If the evaluating authorities determine that Hicks is eligible for conditional discharge pursuant to 18 U.S.C. § 4246(e), the report from that facility shall contain a complete prescribed regimen of medical, psychiatric, or psychological care or treatment that has been certified as appropriate by the director of the facility to which Hicks is committed; and

3. The Attorney General, or his designate, may forcibly administer psychiatric medication to Hicks whenever, in the exercise of professional judgment by a qualified psychiatrist, such medication is necessary to ensure the safety of Hicks and those in contact with him.

Hicks was then sent to the Federal Medical Center at Butner, North Carolina. Hicks is presently at the Butner facility. On October 29, 1991, the authorities at Butner issued a forensic evaluation report which concluded that Hicks is not competent to participate in court proceedings. The Butner authorities further found that Hicks may present a danger to the safety of others.

On December 27, 1991, Judge W. Earl Britt of the United States District Court for the Eastern District of North Carolina civilly committed Hicks to the custody of the Attorney General of the United States, pursuant to 18 U.S.C. § 4246.

## II. Discussion

Hicks has been in continual custody since January 13, 1989. Federal criminal charges remain pending against him. 18 U.S.C. § 4246(d) provides:

The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility. If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility, until—

(1) such a State will assume such responsibility; or

(2) the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another;

whichever is earlier. The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment.

A mentally ill individual is to be retained in federal custody beyond the time limits established by sections 4241 and 4246 "only in those rare circumstances where [he] has no permanent residence or there are no State authorities willing to accept him for commitment." Comp.Crime Control Act of 1984, Pub.L. No. 98–473, 1984 U.S.C.C.A.N. (98 Stat.) 3182, 3432. Hicks permanently resided in Florida. The State of Florida, however, as a signatory to the Interstate Compact on Mental Health, will not accept Hicks for commitment while criminal charges are pending against Hicks. Fla. Stat. § 394.479, Article IX(a) reads:

(a) No provision of this compact except Article V shall apply to any person institutionalized while under sentence in a penal or correctional institution or while subject to trial on a criminal charge, or whose institutionalization is due to the commission of an offense for which, in the absence of mental illness or mental deficiency, said person would be subject to incarceration in a penal or correctional institution.

The Court finds this to be a "Catch–22." Congress, in the legislative history to § 4246, cited the case of *Higgins v. United States*, 205 F.2d 650 (9th Cir.1953), *cert. dismissed*, 346 U.S. 870, 74 S.Ct. 134, 98 L.Ed. 379 (1953), which stands for the following proposition:

While the care of insane persons is essentially the function of the states in their sovereign capacity as parens patriae, and while the federal government has neither constitutional nor inherent power to enter the general field of lunacy, Congress has the power to make provision for the proper care and treatment of persons who become temporarily insane while in custody of the United States awaiting trial upon criminal charges, and to make provision for the care and treatment of federal prisoners who become mentally incompetent during their incarceration after conviction.

*Higgins* makes clear to the Court that the federal government is not best equipped to care for the mentally ill and to provide for their long term psychiatric needs. The language of § 4246 and the accompanying legislative history emphasize that the states are best equipped to care for the mentally ill. Both counsel for the United States and for Hicks agree that a state institution would best provide for Hicks' long term psychiatric needs. According to representations by counsel for Hicks and letters sent to the Court from Hicks' family, it appears that the Arcadia Mental Hospital in Florida would be willing to accept Hicks for commitment, provided the United States dismissed the charges against Hicks.

Furthermore, Hicks has been in federal custody for over three and one-half years. The maximum term of imprisonment Hicks could sustain is five years for his alleged violation of 18 U.S.C. § 871. Hicks shows no signs in his present surroundings of being fit to stand trial. Counsel for Hicks estimates that, should Hicks be convicted, his potential sentence, according to the guideline range, would be from 4 to 10 months. The United States does not dispute this calculation. Thus, if Hicks were competent to stand trial today and was convicted for violating 18 U.S.C. § 871, he would be set free following sentencing because he would have already served his time.

As stated before, § 4246(d) requires the Attorney General to make all reasonable efforts to cause a state to assume responsibility for the mentally ill. This Court finds that it would be reasonable for the United States to dismiss the charges pending against Hicks so that he could be trans-

ferred to the custody of the State of Florida and be cared for at the Arcadia Mental Hospital. *See generally United States v. Charters,* 829 F.2d 479 (4th Cir.1987), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990); *United States v. Baker,* 807 F.2d 1315 (6th Cir.1986). The Court finds that it would be ridiculous to keep Hicks in an inadequate federal institution away from his family in Florida at the mercy of a never ending cycle of evaluations and periodic court hearings.

### III. Conclusion

Thus, it is hereby,

ORDERED AND ADJUDGED, as announced by the Court at the status conference held on July 23, 1992, that the United States has thirty (30) days from July 23, 1992, to dismiss the charges against Hicks and arrange for his transfer to a facility within the state of Florida. If the United States fails to comply with this Order, the Court will dismiss the charges against Hicks *sua sponte.*

DONE AND ORDERED.