Justice Thomas,
with whom Justice Scalia joins in all but Part III-A-l-b, dissenting.
The Court holds today that Congress has power under the Necessary and Proper Clause to enact a law authorizing the Federal Government to civilly commit “sexually dangerous person[s]” beyond the date it lawfully could hold them on a charge or conviction for a federal crime. 18 U. S. C. *159 § 4248(a). I disagree. The Necessary and Proper Clause empowers Congress to enact only those laws that “carr[y] into Execution” one or more of the federal powers enumerated in the Constitution. Art. I, §8, cl. 18. Because §4248 “Execut[es]” no enumerated power, I must respectfully dissent.
I
“As every schoolchild learns, our Constitution establishes a system of dual sovereignty between the States and the Federal Government.” Gregory v. Ashcroft, 501 U. S. 452, 457 (1991). In our system, the Federal Government’s powers are enumerated, and hence limited. See, e. g., McCulloch v. Maryland, 4 Wheat. 316, 405 (1819) (“This government is acknowledged by all to be one of enumerated powers”). Thus, Congress has no power to act unless the Constitution authorizes it to do so. United States v. Morrison, 529 U. S. 598, 607 (2000) (“Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution”). The States, in turn, are free to exercise all powers that the Constitution does not withhold from them. Arndt. 10 (“The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people”).[1] This constitutional structure establishes different default rules for Congress and the States: Congress’ powers are “few and defined,” while those that belong to the States “remain ... numerous and indefinite.” The Federalist No. 45, p. 328 (B. Wright ed. 1961) (J. Madison).
The Constitution plainly sets forth the “few and defined” powers that Congress may exercise. Article I “vest[s]” in *160 Congress “[a]ll legislative Powers herein granted,” § 1, and carefully enumerates those powers in §8. The final clause of § 8, the Necessary and Proper Clause, authorizes Congress “[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.” As the Clause’s placement at the end of §8 indicates, the “foregoing Powers” are those granted to Congress in the preceding clauses of that section. The “other Powers” to which the Clause refers are those “vested” in Congress and the other branches by other specific provisions of the Constitution.
Chief Justice Marshall famously summarized Congress’ authority under the Necessary and Proper Clause in McCul-loch, which has stood for nearly 200 years as this Court’s definitive interpretation of that text:
“Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.” 4 Wheat., at 421.
McCulloch’s summation is descriptive of the Clause itself, providing that federal legislation is a valid exercise of Congress’ authority under the Clause if it satisfies a two-part test: First, the law must be directed toward a “legitimate” end, which McCulloch defines as one “within the scope of the [Cjonstitution” — that is, the powers expressly delegated to the Federal Government by some provision in the Constitution. Second, there must be a necessary and proper fit between the “means” (the federal law) and the “end” (the enumerated power or powers) it is designed to serve. Ibid. McCulloch accords Congress a certain amount of discretion in assessing means-end fit under this second inquiry. The means Congress selects will be deemed “necessary” if they *161 are “appropriate” and “plainly adapted” to the exercise of an enumerated power, and “proper” if they are not otherwise “prohibited” by the Constitution and not “[injconsistent” with its “letter and spirit.” Ibid.
Critically, however, McCulloch underscores the linear relationship the Clause establishes between the two inquiries: Unless the end itself is “legitimate,” the fit between means and end is irrelevant. In other words, no matter how “necessary” or “proper” an Act of Congress may be to its objective, Congress lacks authority to legislate if the objective is anything other than “carrying into Execution” one or more of the Federal Government's enumerated powers. Art. I, §8, cl. 18.
This limitation was of utmost importance to the Framers. During the state ratification debates, Anti-Federalists expressed concern that the Necessary and Proper Clause would give Congress virtually unlimited power. See, e. g., Essays of Brutus, in 2 The Complete Anti-Federalist 421 (H. Storing ed. 1981). Federalist supporters of the Constitution swiftly refuted that charge, explaining that the Clause did not grant Congress any freestanding authority, but instead made explicit what was already implicit in the grant of each enumerated power. Referring to the “powers declared in the Constitution,” Alexander Hamilton noted that “it is express ly to execute these powers that the sweeping clause... authorizes the national legislature to pass all necessary and proper laws.” The Federalist No. 33, at 245. James Madison echoed this view, stating that “the sweeping clause . . . only extend[s] to the enumerated powers.” 3 J. Elliot, The Debates in the Several State Conventions on the Adoption of the Federal Constitution 455 (1836) (hereinafter Elliot). Statements by delegates to the state ratification conventions indicate that this understanding was widely held by the founding generation. E. g., id., at 245-246 (statement of George Nicholas) (“Suppose [the Necessary and Proper Clause] had been inserted, at the end of every power, that *162 they should have power to make laws to carry that power into execution; would that have increased their powers? If, therefore, it could not have increased their powers, if placed at the end of each power, it cannot increase them at the end of all”).[2]
Roughly 30 years after the Constitution’s ratification, Mc-Culloch firmly established this understanding in our constitutional jurisprudence. 4 Wheat., at 421, 423. Since then, our precedents uniformly have maintained that the Necessary and Proper Clause is not an independent fount of congressional authority, but rather “a caveat that Congress possesses all the means necessary to carry out the specifically granted ‘foregoing’ powers of §8 ‘and all other Powers vested by this Constitution.’ ” Kinsella v. United States ex rel. Singleton, 361 U. S. 234, 247 (1960); Carter v. Carter Coal Co., 298 U. S. 238, 291 (1936); see Alden v. Maine, 527 U. S. 706, 739 (1999); Martin v. Hunter’s Lessee, 1 Wheat. 304, 326 (1816); see also Gonzales v. Raich, 545 U. S. 1, 39 (2005) (Scalia, J., concurring in judgment) (stating that, although the Clause “empowers Congress to enact laws . . . that are not within its authority to enact in isolation,” those laws must be “in effectuation of [Congress’] enumerated powers” (citing McCulloch, supra, at 421-422)).
*163 II
Section 4248 establishes a federal civil-commitment regime for certain persons in the custody of the Federal Bureau of Prisons (BOP).[3] If the Attorney General demonstrates to a federal court by clear and convincing evidence that a person subject to the statute is “sexually dangerous,”[4] a court may order the person committed until he is no longer a risk “to others,” even if that does not occur until after his federal criminal sentence has expired or the statute of limitations on the federal charge against him has run. §§4248(a), (d)-(e).
No enumerated power in Article I, § 8, expressly delegates to Congress the power to enact a civil-commitment regime for sexually dangerous persons, nor does any other provision in the Constitution vest Congress or the other branches of the Federal Government with such a power. Accordingly, §4248 can be a valid exercise of congressional authority only if it is “necessary and proper for carrying into Execution” one or more of those federal powers actually enumerated in the Constitution.
Section 4248 does not fall within any of those powers. The Government identifies no specific enumerated power or powers as a constitutional predicate for §4248, and none are readily discernable. Indeed, not even the Commerce *164 Clause — the enumerated power this Court has interpreted most expansively, see, e. g., NLRB v. Jones & Laughlin Steel Corp., 301 U. S. 1, 37 (1937) — can justify federal civil detention of sex offenders. Under the Court’s precedents, Congress may not regulate noneconomic activity (such as sexual violence) based solely on the effect such activity may have, in individual cases or in the aggregate, on interstate commerce. Morrison, 529 U. S., at 617-618; United States v. Lopez, 514 U. S. 549, 563-567 (1995). That limitation forecloses any claim that § 4248 carries into execution Congress’ Commerce Clause power, and the Government has never argued otherwise, see Tr. of Oral Arg. 21-22.[5]
This Court, moreover, consistently has recognized that the power to care for the mentally ill and, where necessary, the power “to protect the community from the dangerous tendencies of some” mentally ill persons, are among the numerous powers that remain with the States. Addington v. Texas, 441 U. S. 418, 426 (1979). As a consequence, we have held that States may “take measures to restrict the freedom of the dangerously mentally ill” — including those who are sexually dangerous — provided that such commitments satisfy due process and other constitutional requirements. Kansas v. Hendricks, 521 U. S. 346, 363 (1997).
Section 4248 closely resembles the involuntary civil-commitment laws that States have enacted under their pa-rens patriae and general police powers. Indeed, it is clear, on the face of the Act and in the Government’s arguments urging its constitutionality, that § 4248 is aimed at protecting society from acts of sexual violence, not toward “carrying into Execution” any enumerated power or powers of the Federal Government. See Adam Walsh Child Protection and Safety Act of 2006, 120 Stat. 587 (entitled “[a]n Act [t]o protect children from sexual exploitation and violent crime”), *165 § 102, id., at 590 (statement of purpose declaring that the Act was promulgated “to protect the public from sex offenders”); Brief for United States 38-39 (asserting the Federal Government’s power to “protect the public from harm that might result upon these prisoners' release, even when that harm might arise from conduct that is otherwise beyond the general regulatory powers of the federal government” (emphasis added)).
To be sure, protecting society from violent sexual offenders is certainly an important end. Sexual abuse is a despicable act with untold consequences for the victim personally and society generally. See, e. g., Kennedy v. Louisiana, 554 U. S. 407, 455, n. 2, 468-469 (2008) (Auto, J., dissenting). But the Constitution does not vest in Congress the authority to protect society from every bad act that might befall it.[6] New York v. United States, 505 U. S. 144, 157 (1992) (“‘The question is not what power the Federal Government ought to have but what powers in fact have been given by the people’ ” (quoting United States v. Butler, 297 U. S. 1, 63 (1936))).
In my view, this should decide the question. Section 4248 runs afoul of our settled understanding of Congress’ power under the Necessary and Proper Clause. Congress may act under that Clause only when its legislation “carr[ies] into Execution” one of the Federal Government’s enumerated powers. Art. I, §8, cl. 18. Section 4248 does not execute any enumerated power. Section 4248 is therefore unconstitutional.
Ill
The Court perfunctorily genuflects to McCulloch’s framework for assessing Congress' Necessary and Proper Clause authority, and to the principle of dual sovereignty it helps to *166 maintain, then promptly abandons both in favor of a novel five-factor test supporting its conclusion that §4248 is a “‘necessary and proper’” adjunct to a jumble of unenu-merated “authorit[ies].” Ante, at 149. The Court’s newly minted test cannot be reconciled with the Clause’s plain text or with two centuries of our precedents interpreting it. It also raises more questions than it answers. Must each of the five considerations exist before the Court sustains future federal legislation as proper exercises of Congress’ Necessary and Proper Clause authority? What if the facts of a given ease support a finding of only four considerations? Or three? And if three or four will suffice, which three or four are imperative? At a minimum, this shift from the two-step McCulloch framework to this five-consideration approach warrants an explanation as to why McCulloch is no longer good enough and which of the five considerations will bear the most weight in future cases, assuming some number less than five suffices. (Or, if not, why all five are required.) The Court provides no answers to these questions.
A
I begin with the first and last “considerations” in the Court’s inquiry. Ante, at 133. The Court concludes that § 4248 is a valid exercise of Congress’ Necessary and Proper Clause authority because that authority is “broad,” ibid., and because “the links between §4248 and an enumerated Article I power are not too attenuated,” ante, at 146. In so doing, the Court first inverts, then misapplies, McCulloch’s straightforward two-part test.
1
a
First, the Court describes Congress’ lawmaking power under the Necessary and Proper Clause as “broad,” relying on precedents that have upheld federal laws under the Clause after finding a “ ‘rationa[l]’ ” fit between the law and *167 an enumerated power. Ante, at 134 (quoting Sabri v. United States, 541 U. S. 600, 605 (2004)). It is true that this Court’s precedents allow Congress a certain degree of latitude in selecting the means for “carrying into Execution” an end that is “legitimate.”[7] See, e. g., Jinks v. Richland County, 538 U. S. 456, 462-463 (2003) (citing McCulloch, 4 Wheat., at 417, 421). But in citing these cases, the Court puts the cart before the horse: The fit between means and ends matters only if the end is in fact legitimate — i. e., only if it is one of the Federal Government’s enumerated powers.
By starting its inquiry with the degree of deference owed to Congress in selecting means to further a legitimate end, the Court bypasses McCulloch’s first step and fails carefully to examine whether the end served by § 4248 is actually one of those powers. See Part III-A-2, infra.
b
Second, instead of asking the simple question of what enumerated power §4248 “carr[ies] into Execution” at McCul-loch’s first step, the Court surveys other laws Congress has enacted and concludes that, because § 4248 is related to those laws, the “links” between §4248 and an enumerated power are not “too attenuated”; hence, §4248 is a valid exercise of Congress’ Necessary and Proper Clause authority. Ante, *168 at 146. This unnecessarily confuses the analysis and, if followed to its logical extreme, would result in an unwarranted expansion of federal power.
The Court observes that Congress has the undisputed authority to “criminalize conduct” that interferes with enumerated powers; to “imprison individuals who engage in that conduct”; to “enact laws governing [those] prisons”; and to serve as a “custodian of its prisoners.” Ante, at 137, 142. From this, the Court assumes that § 4248 must also be a valid exercise of congressional power because it is “‘reasonably adapted’” to those exercises of Congress’ incidental — and thus unenumerated — authorities. See ante, at 143 (concluding that “§4248 is ‘reasonably adapted’ to Congress’ power to act as a responsible federal custodian” (citation omitted)); ante, at 149 (concluding that “the statute is a ‘necessary and proper’ means of exercising the federal authority that permits Congress to create federal criminal laws, to punish their violation, to imprison violators, to provide appropriately for those imprisoned, and to maintain the security of those who are not imprisoned but who may be affected by the federal imprisonment of others”). But that is not the question. The Necessary and Proper Clause does not provide Congress with authority to enact any law simply because it furthers other laws Congress has enacted in the exercise of its incidental authority; the Clause plainly requires a showing that every federal statute “carries] into Execution” one or more of the Federal Government's enumerated powers.[8]
*169 Federal laws that criminalize conduct that interferes with enumerated powers, establish prisons for those who engage in that conduct, and set rules for the care and treatment of prisoners awaiting trial or serving a criminal sentence satisfy this test because each helps to “carr[y] into Execution” the enumerated powers that justify a criminal defendant’s arrest or conviction. For example, Congress’ enumerated power “[t]o establish Post Offices and post Roads,” Art. I, §8, cl. 7, would lack force or practical effect if Congress lacked the authority to enact criminal laws “to punish those who steal letters from the post office, or rob the mail.” McCulloch, supra, at 417. Similarly, that enumerated power would be compromised if there were no prisons to hold persons who violate those laws, or if those prisons were so poorly managed that prisoners could escape or demand their release on the grounds that the conditions of their confinement violate their constitutional rights, at least as we have defined them. See, e. g., Estelle v. Gamble, 429 U. S. 97 *170 (1976). Civil detention under §4248, on the other hand, lacks any such connection to an enumerated power.
2
After focusing on the relationship between § 4248 and several of Congress’ implied powers, the Court finally concludes that the civil detention of a “sexually dangerous person” under §4248 carries into execution the enumerated power that justified that person’s arrest or conviction in the first place. In other words, the Court analogizes §4248 to federal laws that authorize prison officials to care for federal inmates while they serve sentences or await trial. But while those laws help to “carr[y] into Execution” the enumerated power that justifies the imposition of criminal sanctions on the inmate, §4248 does not bear that essential characteristic for three reasons.
First, the statute’s definition of a “sexually dangerous person” contains no element relating to the subject’s crime. See §§ 4247(a)(5)-{6). It thus does not require a federal court to find any connection between the reasons supporting civil commitment and the enumerated power with which that person’s criminal conduct interfered. As a consequence, §4248 allows a court to civilly commit an individual without finding that he was ever charged with or convicted of a federal crime involving sexual violence. §§ 4248(a), (d). That possibility is not merely hypothetical: The Government concedes that nearly 20% of individuals against whom §4248 proceedings have been brought fit this description.[9] Tr. of Oral Arg. 23-25.
Second, §4248 permits the term of federal civil commitment to continue beyond the date on which a convicted pris *171 oner’s sentence expires or the date on which the statute of limitations on an untried defendant’s crime has run. The statute therefore authorizes federal custody over a person at a time when the Government would lack jurisdiction to detain him for violating a criminal law that executes an enumerated power.
The statute this Court upheld in Greenwood v. United States, 350 U. S. 366 (1956), provides a useful contrast. That statute authorized the Federal Government to exercise civil custody over a federal defendant declared mentally unfit to stand trial only “ ‘until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law.’ ” Id., at 368, n. 2 (quoting 18 U. S. C. § 4246 (1952 ed.)). Thus, that statute’s “end” reasonably could be interpreted as preserving the Government’s power to enforce a criminal law against the accused. Section 4248 (2006 ed.), however, authorizes federal detention of a person even after the Government loses the authority to prosecute him for a federal crime.
Third, the definition of a “sexually dangerous person” relevant to §4248 does not require the court to find that the person is likely to violate a law executing an enumerated power in the future. Although the Federal Government has no express power to regulate sexual violence generally, Congress has passed a number of laws proscribing such conduct in special circumstances. All of these statutes contain jurisdictional elements that require a connection to one of Congress’ enumerated powers — such as interstate commerce, e. g., § 2252(a)(2) — or that limit the statute’s coverage to jurisdictions in which Congress has plenary authority, e.g., § 2243(a). Section 4248, by contrast, authorizes civil commitment upon a showing that the person is “sexually dangerous,” and presents a risk “to others,” § 4247(a)(5). It requires no evidence that this sexually dangerous condition will manifest itself in a way that interferes with a federal *172 law that executes an enumerated power or in a geographic location over which Congress has plenary authority.[10]
In sum, the enumerated powers that justify a criminal defendant’s arrest or conviction cannot justify his subsequent civil detention under §4248.
B
The remaining “considerations” in the Court’s five-part inquiry do not alter this conclusion.
1
First, in a final attempt to analogize §4248 to laws that authorize the Federal Government to provide care and treatment to prisoners while they await trial or serve a criminal sentence, the Court cites the Second Restatement of Torts for the proposition that the Federal Government has a “custodial interest” in its prisoners, ante, at 149, and, thus, a broad “constitutional power to act in order to protect nearby *173 (and other) communities” from the dangers they may pose,[11] ante, at 142. That citation is puzzling because federal authority derives from the Constitution, not the common law. In any event, nothing in the Restatement suggests that a common-law custodian has the powers that Congress seeks here. While the Restatement provides that a custodian has a duty to take reasonable steps to ensure that a person in his care does not cause “bodily harm to others,” 2 Restatement (Second) of Torts § 319, p. 129 (1963-1964), that duty terminates once the legal basis for custody expires:
“There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
“(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person’s conduct, or
“(b) a special relation exists between the actor and the other which gives to the other a right to protection.” Id., §315, at 122.
Once the Federal Government’s criminal jurisdiction over a prisoner ends, so does any “special relation[ship]” between the Government and the former prisoner.[12]
*174 For this reason, I cannot agree with Justice Auto that §4248 is a necessary and proper incident of Congress’ power “to protect the public from dangers created by the federal criminal justice and prison systems.” Ante, at 157 (opinion concurring in judgment). A federal criminal defendant’s “sexually dangerous” propensities are not “created by” the fact of his incarceration or his relationship with the federal prison system. The fact that the Federal Government has the authority to imprison a person for the purpose of punishing him for a federal crime — sex-related or otherwise — does not provide the Government with the additional power to exercise indefinite civil control over that person.[13]
2
Second, the Court describes §4248 as a “modest” expansion on a statutory framework with a long historical pedigree. Ante, at 137. Yet even if the antiquity of a practice could serve as a substitute for its constitutionality — and the Court admits that it cannot, ibid. — the Court overstates the relevant history.
Congress’ first foray into this general area occurred in 1855, when it established St. Elizabeth’s Hospital to provide treatment to “insane” persons in the military and the District of Columbia. Act of Mar. 3, 1855, 10 Stat. 682. But *175 Congress was acting pursuant to enumerated powers when it took this step. See Art. I, §8, cl. 17 (granting Congress plenary authority over the District of Columbia); Art. I, § 8, cl. 14 (authorizing Congress to “make Rules for the Government and Regulation of the land and naval Forces”). This enactment therefore provides no support for Congress’ claimed power to detain sexually dangerous persons without an otherwise valid basis for jurisdiction.
Later, Congress provided for the federal civil commitment of “insane” persons charged with or convicted of a federal crime. Act of Feb. 7, 1857, §§ 5-6, 11 Stat. 158; see 17 Op. Atty. Gen. 211, 212-213 (1881); Act of June 23,1874, ch. 465, 18 Stat. 251; Act of Aug. 7,1882, 22 Stat. 330. As the Court explains, however, these statutes did not authorize federal custody beyond the completion of the “term” of federal “imprisonment,” §§2-3, 18 Stat. 252; see 35 Op. Atty. Gen. 366, 368 (1927); 30 Op. Atty. Gen. 569, 570-571 (1916); Act of May 13,1930, ch. 254, §6, 46 Stat. 271, and thus shed no light on the question presented here.
In 1949, Congress enacted a more comprehensive regime, authorizing the civil commitment of mentally ill persons in BOP custody. See 18 U. S. C. §§ 4246,4247 (1952 ed.). This Court addressed that regime in Greenwood, but never endorsed the proposition that the Federal Government could rely on that statute to detain a person in the absence of a pending criminal charge or ongoing criminal sentence.[14]
*176 As already noted, Greenwood upheld the commitment of a federal defendant declared unfit to stand trial on the narrow ground that the Government’s criminal jurisdiction over the defendant — its “power to prosecute for federal offenses— [wajs not exhausted,” but rather “persist[edj” in the form of a “pending indictment.” 350 U. S., at 375; see supra, at 171. The Court was careful to state that “[t]his commitment, and therefore the legislation authorizing commitment in the context of this case, involve[d] an assertion of authority” within “congressional power under the Necessary and Proper Clause.” Greenwood, 350 U. S., at 375 (emphasis added). But it painstakingly limited its holding to “the narrow constitutional issue raised by th[at] order of commitment.” Ibid.
The historical record thus supports the Federal Government’s authority to detain a mentally ill person against whom it has the authority to enforce a criminal law. But it provides no justification whatsoever for reading the Necessary and Proper Clause to grant Congress the power to authorize the detention of persons without a basis for federal criminal jurisdiction.
3
Finally, the Court offers two arguments regarding §4248’s impact on the relationship between the Federal Government and the States. First, the Court and both concurrences suggest that Congress must have had the power to enact § 4248 because a long period of federal incarceration might “seve[r]” a sexually dangerous prisoner’s “claim to ‘legal residence’ ” in any particular State, ante, at 143 (opinion of the Court), thus leaving the prisoner without any “home State to take charge” of him upon release, ante, at 154 (Kennedy, J., concurring in judgment); see ante, at 156 (Alito, J., concurring in judgment) (noting that many federal prisoners, “as a result of lengthy federal incarceration, no longer ha[ve] any substantial ties to any State”). I disagree with the premise of that argument. As an initial matter, States plainly have the constitutional authority to “take charge” of a federal *177 prisoner released within their jurisdiction. See Amdt. 10 (stating that powers not delegated to the Federal Government are “reserved” to the States, and to the people). In addition, the assumption that a State knowingly would fail to exercise that authority is, in my view, implausible. The Government stated at oral argument that its “default position” is to release a federal prisoner to the State in which he was convicted, Tr. of Oral Arg. 15; see also 28 CFR § 2.33(b) (2009), and neither the Court nor the concurrences argue that a State has the power to refuse such a person domicile within its borders. Thus, they appear to assume that, in the absence of 18 U. S. C. § 4248, a State would take no action when informed by the BOP that a sexually dangerous federal prisoner was about to be released within its jurisdiction. In light of the plethora of state laws enacted in recent decades to protect communities from sex offenders,[15] the likelihood *178 of such an occurrence seems quite remote. But even in the event a State made such a decision, the Constitution assigns the responsibility for that decision, and its consequences, to the state government alone.
Next, the Court submits that §4248 does not upset the balance of federalism or invade the States’ reserved powers because it “requires accommodation of state interests” by instructing the Attorney General to release a committed person to the State in which he was domiciled or tried if that State wishes to “ ‘assume ... responsibility’ ” for him. Ante, at 144 (emphasis deleted), 145 (quoting § 4248(d)). This right of first refusal is mere window dressing. Tr. of Oral Arg. 5 (“It is not the usual course that the State does take responsibility”). More importantly, it is an altogether hollow assurance that §4248 preserves the principle of dual sovereignty — the “letter and spirit” of the Constitution — as the Necessary and Proper Clause requires.[16] McCulloch, 4 Wheat., at 421; Printz v. United States, 521 U. S. 898, 923-924 (1997). For once it is determined that Congress has the authority to provide for the civil detention of sexually dangerous persons, Congress “is acting within the powers granted it under the Constitution,” and “may impose its will on the States.” Gregory, 501 U. S., at 460; see Art. VI, cl. 2. Section 4248’s right of first refusal is thus not a matter of constitutional necessity, but an act of legislative grace.
*179 Nevertheless, 29 States appear as amici and argue that § 4248 is constitutional. They tell us that they do not object to Congress retaining custody of “sexually dangerous persons” after their criminal sentences expire because the cost of detaining such persons is “expensive” — approximately $64,000 per year — and these States would rather the Federal Government bear this expense. Brief for Kansas et al. 2; ibid. (“[S]ex offender civil commitment programs are expensive to operate”); id., at 4 (“[T]hese programs are expensive”); id., at 8 (“[T]here are very practical reasons to prefer a system that includes a federal sex offender civil commitment program____ One such reason is the significant cost”).
Congress’ power, however, is fixed by the Constitution; it does not expand merely to suit the States’ policy preferences, or to allow state officials to avoid difficult choices regarding the allocation of state funds. By assigning the Federal Government power over “certain enumerated objects only,” the Constitution “leaves to the several States a residuary and inviolable sovereignty over all other objects.” The Federalist No. 39, at 285 (J. Madison). The purpose of this design is to preserve the “balance of power between the States and the Federal Government... [that] protects] our fundamental liberties.” Garcia v. San Antonio Metropolitan Transit Authority, 469 U. S. 528, 572 (1985) (Powell, J., dissenting); New York v. United States, 505 U. S., at 181. It is the States’ duty to act as the “immediate and visible guardian” of those liberties because federal powers extend no further than those enumerated in the Constitution. The Federalist No. 17, at 169 (A. Hamilton). The Constitution gives States no more power to decline this responsibility than it gives them to infringe upon those liberties in the first instance. FTC v. Ticor Title Ins. Co., 504 U. S. 621, 636 (1992) (“Federalism serves to assign political responsibility, not to obscure it”).
Absent congressional action that is in accordance with, or necessary and proper to, an enumerated power, the duty to *180 protect citizens from violent crime, including acts of sexual violence, belongs solely to the States. Morrison, 529 U. S., at 618 C‘[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime”); see Cohens v. Virginia, 6 Wheat. 264, 426 (1821) (Marshall, C. J.) (stating that Congress has “no general right to punish murder committed within any of the States”).
* * *
Not long ago, this Court described the Necessary and Proper Clause as “the last, best hope of those who defend ultra vires congressional action.” Printz, supra, at 923. Regrettably, today’s opinion breathes new life into that Clause, and — the Court’s protestations to the contrary notwithstanding, see ante, at 148 — comes perilously close to transforming the Necessary and Proper Clause into a basis for the federal police power that “we always have rejected,” Lopez, 514 U. S., at 584 (Thomas, J., concurring) (citing Gregory, supra, at 457; Wirtz, 392 U. S., at 196; Jones & Laughlin Steel Corp., 301 U. S., at 37). In so doing, the Court endorses the precise abuse of power Article I is designed to prevent — the use of a limited grant of authority as a “pretext . . . for the accomplishment of objects not intrusted to the government.” McCulloch, supra, at 423.
I respectfully dissent.

 “With this careful last phrase, the [Tenth] Amendment avoids taking any position on the division of power between the state governments and the people of the States: It is up to the people of each State to determine which ‘reserved’ powers their state government may exercise.” U. S. Term Limits, Inc. v. Thornton, 514 U. S. 779, 848 (1995) (Thomas, J., dissenting).

 See also 4 Elliot 141 (statement of William Maclaine) (“This clause specifies that [Congress] shall make laws to carry into execution all the powers vested by this Constitution, consequently they can make no laws to execute any other power”); 2 id., at 468 (statement of James Wilson) (“[W]hen it is said that Congress shall have power to make all laws which shall be necessary and proper, those words are limited and defined by the following, 'for carrying into execution the foregoing powers.’ [The Clause] is saying no more than that the powers we have already particularly given, shall be effectually carried into execution”); Barnett, The Original Meaning of the Necessary and Proper Clause, 6 U. Pa J. Const. L. 183, 185-186 (2003); Lawson & Granger, The “Proper” Scope of Federal Power: A Jurisdictional Interpretation of the Sweeping Clause, 43 Duke L. J. 267, 274-275, and n. 24 (1993).

 The statute authorizes the Attorney General to petition a federal court to order the commitment of a person in BOP custody (1) who has been convicted of a federal crime and is serving a federal prison sentence therefor, (2) who has been found mentally incompetent to stand trial, or (3) “against whom all federal criminal charges have been dismissed solely for reasons relating to [his] mental condition.” 18 U. S. C. § 4248(a).

 The Act defines a “sexually dangerous person” as one “who has engaged or attempted to engage in sexually violent conduct or child molestation,” and “who is sexually dangerous to others.” § 4247(a)(5). It further defines “sexually dangerous to others” to mean a person who “suffers from a serious mental illness” such that he would “have serious difficulty in refraining from sexually violent conduct or child molestation if released.” §4247(a)(6).

 For the reasons explained in Part III-A-2, infra, the enumerated power that justifies a particular defendant’s criminal arrest or conviction cannot justify his subsequent civil detention under §4248.

 The absence of a constitutional delegation of general police power to Congress does not leave citizens vulnerable to the harms Congress seeks to regulate in §4248 because, as recent legislation indicates, the States have the capacity to address the threat that sexual offenders pose. See n. 15, infra.

Justice Kennedy concludes that the Necessary and Proper Clause requires something beyond rational-basis scrutiny when assessing the fit between an enumerated power and the means Congress selects to execute it. Ante, at 151-153 (opinion concurring in judgment). Other arguments regarding the degree of fit between means and end have been lodged elsewhere. See, e. g., Gonzales v. Raich, 545 U. S. 1, 61 (2005) (Thomas, J., dissenting) (arguing that, for a law to be within the Necessary and Proper Clause, it must bear an “‘obvious, simple, and direct relation’” to an exercise of Congress’ enumerated powers and must not subvert basic principles of federalism and dual sovereignty). But I find that debate beside the point here, because it concerns the analysis employed at McCulloch’s second step, see McCulloch v. Maryland, 4 Wheat. 316 (1819), while the Court’s decision today errs by skipping the first.

 McCulloch makes this point clear. As the Court notes, ante, at 146, McCulloch states, in discussing a hypothetical, that from Congress’ enumerated power to establish post offices and post roads “has been inferred the power and duty of carrying the mail,” and, “from this implied power, has again been inferred the right to punish those who steal letters from the post office, or rob the mail.” 4 Wheat., at 417. Contrary to the Court's interpretation, this dictum does not suggest that the relationship between Congress’ implied power to punish postal crimes and its implied power to carry the mail is alone sufficient to satisfy review under the *169 Necessary and Proper Clause. Instead, McCulloch directly links the constitutionality of the former to Congress’ enumerated power “‘to establish post offices and post roads.’” Ibid, (explaining that “the right to . . . punish those who rob [the mail] is not indispensably necessary to the establishment of a post office and post road,” but is “essential to the beneficial exercise of th[at] power”). More importantly, McCulloch’s holding, as well as the holdings of this Court’s subsequent decisions, make plain that congressional action is valid under the Necessary and Proper Clause only if it carries into execution one or more enumerated powers. Id., at 422 (upholding Congress’ incorporation of a bank because it was a “means ... to be employed only for the purpose of carrying into execution the given powers” (emphasis added)); see Sabri v. United States, 541 U. S. 600, 605 (2004) (“Congress has authority under the Spending Clause to appropriate federal moneys to promote the general welfare, and it has corresponding authority under the Necessary and Proper Clause to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare” (emphasis added; citations omitted)); Stewart v. Kahn, 11 Wall. 493, 506-507 (1871) (“The power to pass [the Act in question] is necessarily implied from the powers to make war and suppress insurrections” (referring to Art. I, § 8, els. 11 and 15; emphasis added)).

 The statute does require the court to find that the subject “has engaged or attempted to engage in sexually violent conduct or child molestation,” § 4247(a)(5), but that factual predicate can be established by a state conviction, or by clear and convincing evidence that the person committed a sex crime for which he was never charged.

 The Constitution grants Congress plenary authority over certain jurisdictions where no other sovereign exists, including the District of Columbia, Art. I, §8, cl. 17, and federal territories, Art. IV, §3, d. 2. In addition, Congress has “broad general powers to legislate in respect to Indian tribes,” United States v. Lara, 541 U. S. 193, 200 (2004) (dting Art. I, §8, cl. 3; Art. II, §2, cl. 2), including certain spedal responsibilities over “Indian country,” 18 U. S. C. § 1151. Although the Necessary and Proper Clause did not authorize Congress to enact §4248,1 do not rule out the possibility that Congress could provide for the civil commitment of individuals who enter federal custody as a result of acts committed in these jurisdictions. See, e.g., United States v. Cohen, 733 F. 2d 128 (CADC 1984) (en banc) (upholding dvil commitment of a defendant under a District of Columbia statute authorizing the institutionalization of persons acquitted by reason of insanity). Although two of the respondents in this case were either charged with or convicted of criminal acts committed in such jurisdictions, see ante, at 131-132; 507 F. Supp. 2d 522, 527, and n. 2 (EDNC 2007), that question is not presented here because §4248 does not make that fact essential to an individual’s placement in dvil detention.

 The Court also cites Youngberg v. Romeo, 457 U. S. 307 (1982), but that case lends even less support than the Restatement. In Youngberg, an inmate at a state hospital argued that hospital workers violated his constitutional rights when they applied restraints to keep him in his bed at the hospital infirmary. Id., at 310-311. In assessing that claim, this Court noted that the hospital had a responsibility to “protect its residents” from the danger of violence. Id., at 320 (emphasis added). The Court never suggested that this responsibility extended to “nearby (and other) communities.” Ante, at 142. Moreover, the hospital was a state institution. Nothing in Youngberg suggests that the Federal Government can detain a person beyond the date on which its criminal jurisdiction expires for fear that he may later pose a threat to the surrounding community.

Federal law permits a sentencing court to order that a defendant be placed on a term of “supervised release” after his term of imprisonment *174 is complete. 18 U. S. C. §§ 3583, 3624(e). Contrary to the Government’s suggestion, federal authority to exercise control over individuals serving ternas of “supervised release” does not derive from the Government’s “relationship” with the prisoner, see Brief for United States 38, but from the original criminal sentence itself Supervised release thus serves to execute the enumerated power that justifies the defendant’s statute of conviction, just like any other form of punishment imposed at sentencing.

 The fact that Congress has the authority to “provide for the apprehension of escaped federal prisoners,” see ante, at 157 (Auto, J., concurring in judgment), does not change this conclusion. That authority derives from Congress’ power to vindicate the enumerated power with which the escaped defendant’s crime of conviction interfered, not a freestanding police power.

 In addition, at least some courts questioned the Federal Government’s power to detain a person in such circumstances. See Dixon v. Steele, 104 F. Supp. 904, 908 (WD Mo. 1952) (holding that the Federal Government lacked authority to detain an individual declared mentally unfit to stand trial once it was determined that he was unlikely to recover in time to he prosecuted); Higgins v. United States, 205 F. 2d 650, 653 (CA9 1953) (avoiding this constitutional question by interpreting the statute to permit federal civil detention only for a period reasonably related to a criminal prosecution); Wells v. Attorney General of United States, 201 F. 2d 556, 560 (CA10 1953) (same).

 As we have noted before, all 50 States have developed “some variation” of a system “for mandatory registration of sex offenders and corresponding community notification.” Smith v. Doe, 538 U. S. 84, 89-90 (2003). In addition, several States have taken further steps; some impose residency restrictions on sex offenders, see, e. g., Kennedy v. Louisiana, 554 U. S. 407, 457-458, n. 5 (2008) (Auto, X, dissenting) (collecting statutes), and, most relevant here, 22 States have enacted involuntary civil-commitment laws substantially similar to §4248, see Ariz. Rev. Stat. Ann. § 36-3701 et seq. (West 2009); Cal. Welf. & Inst. Code Ann. § 6600 et seq. (West 1998 and Supp. 2010); Fla. Stat. § 394.910 et seq. (2007); Ill. Comp. Stat., ch. 725, § 205 et seq. (West 2008); Iowa Code § 229 A.l et seq. (2009); Kan. Stat. Ann. §59-29a01 et seq. (2005 and 2008 Cum. Supp.); Mass. Gen. Laws, ch. 123A (West 2008); Minn. Stat. §253B (2008 and 2009 Supp.); Mo. Rev. Stat. §632.480 et seq. (2009 Cum. Supp.); Neb. Rev. Stat. § 29-2923 et seq. (2008); N. H. Rev. Stat. Ann. § 135-E:1 et seq. (West Cum. Supp. 2009); N. X Stat. Arm. § 30:4-82.4 et seq. (West 2008); N. M. Stat. Ann. §43-1-1 et seq. (2000 and Cum. Supp. 2009); N. Y. Mental Hyg. Law Ann. § 10.01 et seq. (West Supp. 2010); N. D. Cent. Code Ann. § 25-03.3-01 et seq. (Lexis 2002 and Supp. 2009); Ore. Rev. Stat. § 426.510 et seq. (2007); S. C. Code Ann. §44-48-10 et seq. (Supp. 2009); Term. Code Ann. § 33-6-801 et seq. (2007); Tex. Health & Safety Code Ann. § 841.001 et seq. (West Supp. 2009); Va. Code Ann. § 37.2-900 et seq. (Lexis Cum. Supp. 2009); Wash. Rev. Code § 71.09.010 et seq. (2008); Wis. Stat. Ann. § 980.01 et seq. (West 2007 and Supp. 2009).

 The Court describes my argument as a claim that “§4248 violates the Tenth Amendment.” Ante, at 143. Yet, I agree entirely with the Court that “‘it makes no difference whether one views the question at issue Diere] as one of ascertaining the limits of the power delegated to the Federal Government under the affirmative provisions of the Constitution or one of discerning the core of sovereignty retained by the States under the Tenth Amendment.’” Ante, at 144 (quoting New York v. United States, 505 U. S. 144, 159 (1992)). Section 4248 is unconstitutional because it does not “carr[y] into Execution” an enumerated power. Therefore, it necessarily intrudes upon the powers our Constitution reserves to the States and to the people.